# EXHIBIT 4



DOCKETED
SAN FRANCISCO

DEC 2 7 2007

By ___ D. VELASCO
No. SF 2001 PA 1185

# IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

|  |  |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA , | No. |
| Plaintiff and Respondents, |  |
| v. | H023370 |
| SAMUEL ORTEGA, | (Santa Clara Co. Sup. Ct. No. |
| Defendant and Appellant. | B9947307/ BB152071) |

## PETITION FOR REVIEW

CHARLES M. BONNEAU
Attorney at Law
(State Bar No.: 056583)
331 J Street, Suite 200
Sacramento, CA 95814
(916) 444-8828
Attorney for Defendant and Appellant

# TABLE OF CONTENTS

QUESTIONS PRESENTED.............................................................................2

STATEMENT OF CASE AND FACTS .........................................................2

ARGUMENT .................................................................................................3

I.    COUNTS 5, 9, AND 11, ALL CONVICTIONS OF ATTEMPTED
      RAPE, MUST BE REVERSED FOR LACK OF SUFFICIENT
      EVIDENCE. ..........................................................................................3

      A. VICTIM 2. .......................................................................................4

      B. VICTIM 4...........................................................................................5

      C. VICTIM 5...........................................................................................6

      D. ANALYSIS..........................................................................................7

II.   COUNTS 5 AND 6, 9 AND 10, AND 11 AND 12 MUST BE
      REVERSED BECAUSE EVIDENCE OF THESE OFFENSES
      WAS IMPROPERLY ADMITTED AS IMPEACHMENT OR
      REBUTTAL OF APPELLANT'S TESTIMONY. .......................................11

      A. PROCEDURAL BACKGROUND. .......................................................12

      B. IMPEACHMENT. ..............................................................................14

      C. EVIDENCE CODE SECTION 1101. .................................................15

      D. EVIDENCE CODE SECTION 1108. .................................................16

CONCLUSION.............................................................................................17

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Cooper v. Dupnik*
   (9th Cir. en banc 1992) 963 F.2d 1220................................................................11

*Harris v. New York*
   (1971) 401 U.S. 222 ........................................................................................11

*Henry v. Kernan*
   (9th Cir. 1999) 197 F.3d 1021 ........................................................................11

*Jackson v. Virginia*
   (1979) 443 U.S. 307 ..........................................................................................4

*Walters v. Maass*
   (9th Cir. 1995) 45 F.3d 1355 ...........................................................................8

## STATE CASES

*People v. Ansaldo*
   (1998) 60 Cal.App.4th 1190................................................................................3,5

*People v. Bonner*
   (2000) 80 Cal.App.4th 759.................................................................................9

*People v. Brown*
   (1993) 17 Cal.App.4th 1389...............................................................................14

*People v. Ewoldt*
   (1994) 7 Cal.4th 380..........................................................................................15

*People v. Harris*
   (1998) 60 Cal.App.4th 727.................................................................................14

*People v. Johnson*
   (1980) 26 Cal.3d 557..........................................................................................4

*People v. Siko*
   (1988) 45 Cal.3d 820..........................................................................................10

*People v. Wheeler*
   (1992) 4 Cal.4th 284 ....................................................................................13,14

## STATE STATUTES

Evidence Code

§ 352 ............................................................................................................13,14

§ 1101 ........................................................................................................11,13,15

§ 1108 ........................................................................................................11,13,16

§1235 .............................................................................................................14

Penal Code

§ 21a .................................................................................................................3

## MISCELLANEOUS

CALJIC 6.00   ......................................................................................................3

# IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

PEOPLE OF THE STATE OF CALIFORNIA ,

          Plaintiff and Respondents,

v.

SAMUEL ORTEGA,

            Defendant and Appellant.

No.

H023370

(Santa Clara Co. Sup. Ct. No.
B9947307/ BB152071)

## PETITION FOR REVIEW

    TO THE HONORABLE RONALD GEORGE, PRESIDING JUSTICE, AND TO THE HONORABLE ASSOCIATE JUSTICES OF THE CALIFORNIA SUPREME COURT:

    Defendant and appellant SAMUEL ORTEGA petitions this Court for review following the affirmance of his conviction for multiple violent sex offenses. The court of appeal eliminated the penalty attached to a kidnapping enhancement, and otherwise af-

firmed the conviction and sentence.  A copy of the court of appeal opinion, dated November 22, 2002, is attached as Attachment 'A.'

## QUESTIONS PRESENTED

1. Whether there was a lack of sufficient evidence on three counts of attempted rape, where the attacks had no sexual content and instead disclose an intent to inflict bodily harm on the victims.

2. Whether four counts of attempted rape must be overturned because evidence of those counts lacks any tendency to impeach or rebut appellant's testimony.

## STATEMENT OF CASE AND FACTS

The factual and procedural history of the case is summarized in the opinion of the court of appeal.  Additional relevant facts will be referenced in this Petition as necessary.

2

## ARGUMENT

## I. COUNTS 5, 9, AND 11, ALL CONVICTIONS OF ATTEMPTED RAPE, MUST BE REVERSED FOR LACK OF SUFFICIENT EVIDENCE.

These counts involve victims Wei L. (victim 2; count 5), Azalea (or Azalia) M. (victim 4; count 9), and Hea P. (victim 5; count 11). The evidence in this record shows an attack on each of these women, but without evidence of an attempted rape. The court of appeal supposes that the other counts, showing sex-related assaults, necessarily support the findings of attempted rape as to these three counts. However, that reasoning may only be taken so far. Here, the extreme violence of the attacks precludes a sexual motivation because any possible sexual element would be impossible in the context of such violent and bloody assaults.

"An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." (Penal Code § 21a.) The jury was appropriately instructed on attempt, in the language of CALJIC 6.00. (CT 544.)

As to each of the above counts, the record lacks any evidence of sexual intent in the attacks on the victims. When the prosecution presents evidence of multiple offenses, and there are "strikingly similar methods of operation" involving all victims, the jury can conclude that the defendant had the same sexual motivation as to all victims. (*People v. Ansaldo* (1998) 60 Cal.App.4th 1190, 1197.) However, the other offenses presented here

3

did not have the same method of operation or the same object. Some offenses had a sexual motivation, some did not; several involved an attempt to stab the victim or to inflict other physical violence, without a sexual motivation. As to these three offenses (counts 5, 9, and 11), there is insufficient evidence of sexual motivation.

An appellate court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence – that is, evidence which is reasonable, credible, and of solid value – such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) Failure to present such evidence in support of conviction is a denial of due process guaranteed by the United States Constitution. (*Jackson v. Virginia* (1979) 443 U.S. 307, 326.)

### A. Victim 2.

Wei L. was 22 years old when she was attacked on March 15, 1999. She was walking home on Latham Street at about 7:00 p.m. (RT 921.) From the corner of her eye, she saw a man come out of the shadows, wearing a mask and carrying a long, sharp knife. (RT 922.) She screamed, then fell or was pushed to the ground. (RT 925-926.) The man was waving the knife, but he did not straddle her. When someone else yelled at him, the attacker ran away. (RT 928.)

Asked what she thought the assailant was trying to do to her, Wei L. said, "I think it wasn't a robbery. But I think perhaps it was possible rape." (RT 930.) She did not say why she drew that conclusion.

4

In the recorded portion of the interrogation, appellant said that he attacked a Chinese woman. (ACT 134, 176.) Detective Vieyra testified that appellant described an incident in which he saw the victim coming, hid, then hit her. She fell and screamed, and another person came by and yelled at him. (RT 1030.)

This evidence does not establish sufficient evidence of an attempted rape. The attack was in the street, where a rape would have been impossible. The victim's bare conclusion of the perpetrator's intent has no evidentiary value. (*People v. Ansaldo* (1998) 60 Cal.App.4th 1190, 1197: "The fact that *she* interpreted his request to be for sex at some future point is not determinative.") The purpose of the attack may have been to stab or otherwise harm the victim, as occurred in other assaults, but there is nothing to place this attack in the category of those incidents which had an element of sexual intent.

### B. Victim 4.

Azalea M. did not testify. Her sister-in-law, Juana C., saw her just after the attack on April 6, 1999, and she spoke to police officers a short time after that. Azalea M. said that she was walking on Latham when a man came out of some bushes carrying a knife, and threw her to the ground. He tried to stab her five times. She was able to ward off the blows with her shopping bags. (RT 821, 908, 919.)

5

In the recorded interrogation, appellant spoke of an attack on a woman who had said bad things to his wife in the past. (ACT 126.)[1]  There was no sexual content to his description of this attack.

Again, there was insufficient evidence that the attack on Azalea M., as violent as it was, was undertaken with the intent to rape.  The court of appeal injects evidence of attempted rape into this episode strictly through comparison with other assaults which had a sexual aspect.  Some of appellant's attacks had a sexual component, others did not.  This incident had no sexual component, indeed a sexual assault would have been impossible under the circumstances.  Evidence of similar episodes cannot supply the only evidence of sexual motivation, where the circumstances of the assault are inconsistent with a sex-motivated attack.

### C. Victim 5.

Hea P. testified that she was walking from the Wal Mart at 8:35 p.m. on May 8, 1999, when she was attacked.  She saw a man with a knife, and she turned and ran.  The man stabbed her in the right hip, then ran away. (RT 880.)

In the transcription of his statement to police, appellant said that he hit a woman at the Showers entrance to Wal Mart. (ACT 142, 144-145.)  According to Detective Vieyra, a portion of appellant's statement included a description of this attack.  Appellant jumped

---

[1]    Detective Vieyra described this portion of the interview as including appellant saying that the victim "fought him off with her bags that she had." (RT 1026.)  That portion of appellant's statement does not appear in the transcription, however.

out and yelled, and the victim screamed and ran, then fell. He swung a knife at her legs, but did not know whether he hit her. (RT 1025.)

Again, there was no sexual content to this attack. Given the circumstances of the assault, including the serious stab wound suffered by the victim, there is no basis to conclude that appellant was attempting to rape her.

### D. Analysis.

Appellant explained these incidents in terms of a need to inflict violence on women, without the intent to rape them.

VIEYRA: Okay. Do you think that also happened in the rest of them, too?

ORTEGA: No, I don't know because, because, truthfully raping, no.

VIEYRA: Well, we know it isn't that.

ORTEGA: Because if I wanted to do it, you know that a woman [unintelligible] where you throw her down, she won't get up anymore on you.

VIEYRA: True.

ORTEGA: But no, I don't know, I don't know, the good part is just throwing her down, hitting people.... But I don't know why.

(ACT 138.)

VIEYRA: What happened here?

ORTEGA: ... it's just that I don't know. It's just that, look, the problem is that I don't know what's the fun in just grabbing them and throwing them down.... Because if I had wanted to do something, I would have done it.

VIEYRA: What do you mean? If you wanted to kill her or...

ORTEGA: No.

7

VIEYRA: ... rape her?

ORTEGA: Um-hum, I would've done it.

VIEYRA: You would've done it.

ORTEGA: There was time.

(ACT 166.)

Some incidents had a sexual component, most notably the rape and sodomy of Aide M. Other incidents, though violent, had no sexual component at all, such as the slashing of Rocio G. The above three incidents (counts 5, 9, and 11) lacked any sexual component, therefore the evidence cannot support the attempted rape convictions on these counts.

A similar question was addressed in *Walters v. Maass* (9th Cir. 1995) 45 F.3d 1355. That case involved a federal habeas corpus petition taken after a state conviction which included counts of attempted rape and attempted sodomy. The defendant in that case enticed a thirteen-year-old girl in an effort to get her to enter his truck. He had been convicted of a prior similar offense in which the victim was successfully kidnapped, then sodomized and raped. The Ninth Circuit held that even though the defendant was properly convicted of attempted kidnapping, and the prior conviction suggested that the scenario may have unfolded in a manner similar to the prior offense, this possibility was not sufficient to support the convictions for attempted rape and attempted sodomy. (*Id.* at 1360.) The court of appeal attempts to distinguish *Walters v. Maas*, but not effectively. There was insufficient evidence solely from the other incidents to inject intent to rape (rather than intent to inflict great bodily injury) into these incidents.

In *People v. Bonner* (2000) 80 Cal.App.4th 759, the court of appeal reviewed a conviction for two counts of attempted robbery. The circumstances of *Bonner* are noteworthy because although during the attempted robbery only one victim, a hotel manager, was present, the defendant was convicted of attempted robbery of both the manager and the assistant manager. The reason for the second count of conviction was that the manager was normally accompanied by the assistant manager, although she was not with him on the day of the offense. The defendant knew that she was normally with the manager, and said that he intended to rob them both. (*Id.* at 762.) On appeal, he argued that since the assistant manager was not present, he could not be convicted of that count of attempted robbery.

The *Bonner* court concluded that the defendant's intent to rob two people, plus his execution of the plan up to a point just shy of the actual robbery, was enough to support conviction on both counts. Based on the limited case law in this area, the court concluded that "multiple acts of attempt can arise from a single act which goes beyond mere preparation. Such multiple counts are dependent, however, on demonstration of sufficient evidence to prove beyond a reasonable doubt that the offender had multiple purposes in accompanying the single act." (*Id.* at 767.)

In the present case, the circumstances of the knife assaults preclude a concurrent attempt to rape the victims. Hea P. was seriously injured by a deep knife wound to the hip. Azalea M. barely warded off serious injury; the stabbing of her shopping bags indicated that she was inches away from being stabbed herself. Wei L. was assaulted in the open street, and apparently narrowly escaped a knife wound. None of these victims was

9

verbally threatened in an effort to conform to a rape demand. None was taken off the street to a semi-secluded location where a rape could be completed.

In the abstract, there is nothing to preclude a defendant from being convicted of multiple counts based on a single act committed with multiple criminal intents. (cf. *People v. Siko* (1988) 45 Cal.3d 820, 825.) However, as stated in the *Bonner* holding, there must be evidence sufficient to establish beyond a reasonable doubt that the defendant had multiple purposes in accomplishing the single act. Inflicting serious knife wounds to the victim, causing extensively bleeding, all occurring in a public place, is inconsistent with the objective of rape.

Accordingly, these three counts must be reversed for lack of sufficient evidence.

## II. COUNTS 5 AND 6, 9 AND 10, AND 11 AND 12 MUST BE RE-VERSED BECAUSE EVIDENCE OF THESE OFFENSES WAS IM-PROPERLY ADMITTED AS IMPEACHMENT OR REBUTTAL OF APPELLANT'S TESTIMONY.

Initially, the prosecution case was limited to evidence concerning counts 1 through 4, 22, and 23 of the second amended information. The People could not go forward on the remaining counts because appellant's admissions to the remaining counts had been excluded under *Miranda*. (CT 449.)  When appellant testified, however, he was questioned about the offenses charged in the remaining counts, including the assaults on Wei L., Azalea M., and Hea P.  When he denied his involvement in these offenses, the portion of his pre-trial statement concerning those offenses was introduced into evidence. (See *Harris v. New York* (1971) 401 U.S. 222.)

However, even assuming that the *Miranda* hurdle was properly cleared (cf. *Cooper v. Dupnik* (9th Cir. en banc 1992) 963 F.2d 1220, 1240; *Henry v. Kernan* (9th Cir. 1999) 197 F.3d 1021, 1028 [forbidding police questioning "outside *Miranda*"]), evidence of the three incidents involving Wei L., Azalea M., and Hea P. was improperly introduced, because that evidence was not properly admitted to impeach his testimony, and did not meet the minimum qualifications for admissibility under Evidence Code §§ 1101 and 1108.

/////

/////

/////

11

**A. Procedural Background.**

In the midst of the interrogation on December 23, 1999, after he had spoken at length about the attacks on Aide M. and Rocio G., appellant indicated his wish to remain silent.

> [DETECTIVE] HSIUNG: [in English] *I'm talking about everything, the Latham attacks.*
>
> [DETECTIVE] VIEYRA: [in Spanish] We are talking about everything.
>
> ORTEGA:  Well, that's the problem, because I can't take responsibility for something that I didn't do [unintelligible].
>
> ....
>
> VIEYRA: We... I already told you that I don't want to hear more lies.
>
> ORTEGA: Then now, I think I'm not going to say anything anymore.
>
> (ACT 119, 120.)

The trial court, on appellant's objection, found that this was an invocation of the *Miranda* privilege, and excluded the remainder of appellant's statement, in which he made admissions to the offenses committed on Wei L., Jane Doe, Azalea M., Hea P., Naylee G., Dora A., and Felicitas S. (CT 449.)

Faced with this ruling, the prosecutor requested a continuance.  At the next appearance, the prosecutor agreed to a severance of the remaining counts, as previously requested by the defense. (RT 174.)  Realistically, the prosecution could not go forward on the remaining counts without evidence of the defendant's statements, since none of the victims except Rocio G. and the workmen near the Felicitas S. incident could identify him.

The situation changed again when appellant took the stand and testified, against the advice of counsel. (RT 638.) The trial court advised appellant that he could be impeached with an un-Mirandized statement, and that the prosecution could then go forward with all additional counts. (RT 636.)

Defense counsel indicated that in direct examination appellant would only be questioned about the currently alleged counts, involving Aide M. and Rocio G. Defense counsel objected to questions on the remaining offenses, because (1) such questioning would trigger a mini-trial, contrary to Evidence Code § 352, and (2) evidence of identity is too thin without the pre-trial statements, and the prosecutor could not satisfy sections 1101 (b) and 1108. (RT 639.)

The prosecutor responded that she could question appellant about his intent with respect to the remaining offenses, and if he denied intent to rape, the offenses would be admissible as impeachment. Furthermore, the prosecutor argued, the remaining offenses would be independently admissible under sections 1101 and 1108. (RT 641.)

The trial court held that the evidence of the remaining offenses would be admitted under the holding of *People v. Wheeler* (1992) 4 Cal.4th 284, and might be independently admissible under sections 1101 and 1108. (RT 642.)

Appellant then took the stand. On direct examination he was questioned about the attacks on Aide M. and Rocio G., which he denied. (RT 644-650.) On cross examination the prosecutor went into detailed questioning on the remaining offenses. (RT 657-740.) Evidence was then presented of appellant's pretrial admissions concerning the remaining

13

offenses, and the victims were called to testify concerning the circumstances of those assaults.

Evidence concerning three of the incidents - Wei L., Azalea M., and Hea P. - was improperly admitted under the trial court's ruling.

### B. Impeachment.

Under the rule of *People v. Wheeler, supra,* a defendant may be impeached with evidence of prior acts of misconduct. (Once admitted for impeachment, evidence of the other offenses became substantive evidence of those offenses (Evidence Code §1235). This permitted the filing of the fourth amended information including the six counts challenged here.) However, admission of other offense evidence under *Wheeler* is limited by the probative-value-versus-prejudicial-effect test of Evidence Code § 352. (See *People v. Brown* (1993) 17 Cal.App.4th 1389 and *People v. Harris* (1998) 60 Cal.App.4th 727.)[2]

The probative value of these three incidents was very slight as to appellant's credibility. Evidence of the three incidents was admitted to impeach his denial of the Aide M. and Rocio G. incidents. But appellant was identified as the perpetrator of the Aide M. rape and sodomy by DNA. (RT 492.) He was identified as Rocio G.'s attacker by the testimony of the victim, who knew him. (RT 414.) And, once he testified, appel-

---

[2]    The court of appeal (p. 12) is at some pains to demonstrate that the other crimes evidence was relevant under *Wheeler*. Appellant has not questioned that the other crimes evidence has some slight relevance, but rather argues that it was more prejudicial than probative.

14

lant was impeached by his own confession to the Rocio G. attack. (RT 993.) The knife

attacks on Wei L., Azalea M., and Hea P. were not probative of his identity as the at-

tacker of either Aide M. or Rocio G.

To the extent that other crimes evidence was admissible to establish the sexual in-

tent of the attempted rape alleged as to Rocio G. (a charge which he was acquitted on),

that evidence was abundantly supplied through the attacks on Jane Doe, Naylee G., and

Dora A., all of which had at least some sexual aspect. The three attacks which did not

include a sexual aspect could not have added to the jury's fund of knowledge regarding

any issue for their decision.[3]

Since these three incidents had no probative value in the trial viewed at the time

the impeaching evidence was offered, impeachment was not a ground on which the evi-

dence should have been admitted.

### C. Evidence Code Section 1101.

Under this section, uncharged incidents of misconduct may be introduced to show

identity, or to show a mental aspect or element of a charged offense such as motive or

intent or common plan. (*People v. Ewoldt* (1994) 7 Cal.4th 380.) As set forth above, evi-

dence of these three offenses added nothing to the identity equation. They were also

---

[3]  \  The court of appeal (p. 13) sets great store by the value of these incidents to im-
peach appellant's testimony that he did not plan some of the attacks, and that on the last
attack he was inebriated. It is difficult to see how planning activity on one occasion
would tend to show planning activity on another occasion (activity which was not an
element of either offense), and especially how it would tend to discredit a claim that he
was inebriated at another place and time.

useless to the jury's determination of any mental element, since these three offenses do not tend to establish sexual motivation. They should have been excluded under section 1101.

### D. Evidence Code Section 1108.

Even if other crimes evidence is excluded as character evidence under section 1101, it may be admissible in a sex offense prosecution, if the other crime was a "sexual offense" as defined in section 1108 (d). For the reasons stated in Argument I above, the offenses involving Wei L., Azalea M., and Hea P. were all serious knife attacks which lacked any element of sexual intent. Therefore, they did not qualify for admissibility under section 1108.

For the reasons stated, evidence of these three attacks was improperly admitted for any purpose - as impeachment or as other crimes evidence. Without a proper ground to admit appellant's admissions to these three attacks, there was no basis for the subsequent convictions. Without this device of admissibility, bootstrapping the evidence into the record on the heels of the defendant's own testimony, no conviction would have been possible on these six counts. For these reasons, the conviction on these six counts must be reversed.

## CONCLUSION

For the reasons stated, review should be granted and appellant's conviction should be reversed.

Date: December 23, 2002

Respectfully submitted,

_____
CHARLES M. BONNEAU
Attorney for Appellant and Petitioner

# ATTACHMENT A

**COPY**

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SIXTH APPELLATE DISTRICT

THE PEOPLE,

    Plaintiff and Respondent,

    v.

SAMUEL ORTEGA,

    Defendant and Appellant.

H023370
(Santa Clara County
Super. Ct. Nos. B9947307, BB152071)

**FILED**

NOV 2 2 2002

Court of Appeal - Sixth App. Dist.

By ——————————
        DEPUTY

    A jury convicted defendant Samuel Ortega of multiple sexual offenses, assault with a deadly weapon, attempted kidnapping for rape, and possession of a controlled substance. The convictions involved 20 counts relating to nine different female victims. The trial court sentenced defendant to two consecutive life terms, consecutive to a term of 25 years to life, consecutive to a determinate term of 55 years in state prison. Defendant appeals, contending, among other things, that there was insufficient evidence to support the special circumstance of kidnapping that resulted in the term of 25 years to life imposed pursuant to Penal Code section 667.61.[1]

### A.   INTRODUCTION

    The residents and shoppers in and around Latham Street in Mountain View had been terrorized by a series of nighttime assaults on women. Victim 1 was raped in 1997. Eight other women were attacked in 1999. Defendant was arrested on December 23,

———————————————

[1] Hereafter, all undesignated statutory references are to the Penal Code.

1999 following a knife attack on Victim 9 that had occurred in the same general area that day. Mountain View Police Officers Vieyra and Hsiung interrogated defendant at length and asked him about Victim 9 and all the other victims that had been attacked in 1999. Defendant confessed to all of the 1999 attacks. DNA evidence confirmed defendant's connection to the 1997 attack on Victim 1. The prosecutor charged defendant with offenses relating to all nine of the victims. Defendant pled not guilty.

At the beginning of trial the court granted defendant's motion in limine to suppress a large part of his confession. (*Miranda v. Arizona* (1966) 384 U.S. 436.) As a result, the prosecutor chose to go to trial on only the counts relating to Victim 1 and Victim 9. The trial court permitted evidence of an uncharged attack on Victim 8 under Evidence Code section 1101, and noted that if defendant chose to testify, his confession to all of the other attacks would then be admissible to impeach his testimony. The prosecutor made it clear that if the confession was later admitted she would seek to amend the information and add the counts that were severed at the beginning of trial.

Defendant did testify, against the advice of his attorney. On cross-examination and over objection the prosecutor asked defendant about the attacks on all the victims and he denied them all. The prosecution moved to amend the information and during the rebuttal phase presented evidence of the entire confession and of the attacks on all the other victims. The jury convicted defendant on 20 of 22 counts.

## B.   FACTS

### 1.    The People's Case in Chief

On March 24, 1997, Victim 1 got off work around 11:20 p.m. and started walking home. When she reached Latham Street someone grabbed her and pulled her about 40 feet into the bushes. She felt a knife to her back. Her assailant told her to get on her knees. When the attacker spoke to her, Victim 1 thought she recognized a Salvadoran accent. The attacker grabbed her vagina and inserted his fingers. Then he put his penis in her vagina, then in her anus, and then again in her vagina, and then ejaculated. Victim

2

1 ran home and told her family what had happened. She was crying and shaking. A police officer responded and Victim 1 was taken to the hospital for an examination. The examination was consistent with forcible rape. DNA samples were taken and preserved. These samples were later determined to have come from the defendant. Victim 1 testified that although at the time of the rape defendant had been wearing a dark sweatshirt with the hood tied tight around his face, she recognized his eyes and his voice and positively identified defendant as the man who had attacked her.

Over two years later, at 5:40 on the morning of December 23, 1999, Victim 8 was walking to work when she was hit on the lower leg by a bicycle. Two workmen were sitting in their trucks in the vicinity of Latham Street at the time. One of the men saw a man on a bicycle hitting a woman who was on foot. The victim screamed and got away when two men ran up. The assailant rode off on his bicycle. One of the workmen later positively identified defendant as the person he saw riding a bicycle in the same area that morning.

Less than an hour later, around 6:20 a.m., Victim 9 left her house to get in her car to go to work. When she opened her car door a man stood up from behind the next car in the parking lot. The man was wearing a jacket with a hood, but when the hood came down Victim 9 recognized defendant—the "Salvadorian" who lived four trailers down from her own. Defendant slashed at her and cut her cheek and throat. The wounds required 50 to 60 stitches to close and Victim 9 continues to have trouble eating and drinking. Later, an investigating officer went to defendant's trailer where he seized defendant's jacket and a bicycle that was parked nearby. Blood on the jacket was determined to have come from Victim 9.

### 2.    The Defense Case

Defendant testified that he did not remember attacking or raping Victim 1 in 1997. He admitted that he knew who Victim 1 was, but he just did not remember whether he ever had sex with her. He said that he had had relations with a lot of women, but not by

3

force. As to the attack on Victim 9 on December 23, 1999, defendant admitted that he might have been there in the parking lot, but that he did not do harm to anyone. He said he had been drinking and doing cocaine and that he was very "messed up" at the time.

On cross examination defendant again responded that he might have had sex with Victim 1, but not by force. The prosecutor asked him about each of the uncharged attacks and he denied them all. Defendant said that he was never hiding any place. "At night I'm at home with my wife." He denied that he waited in the bushes for girls to walk by. He denied carrying a knife in 1999. He said that he had never attacked anyone. "[E]ven less would I do harm to a woman." He testified that he had no need to rape, and that he was not capable of cutting anyone. He denied ever crashing into anyone with his bicycle, and he denied ever telling anyone to take off her clothes. Defendant also claimed that he didn't go out of his house at night.

The prosecutor went on to quote directly from the transcript of defendant's previously suppressed confession, addressing each of the 1999 attacks in turn. In brief, defendant claimed that he did not remember what he had said to the police, and, in parts, flatly denied or contradicted the statements he had made.

3.    *Rebuttal*.

Victim 2 testified that on March 15, 1999 she was walking on Latham Street when a man wearing a mask came out from behind some bushes with a knife. Victim 2 yelled and either fell or was pushed to the ground. In less than a minute, someone came from across the street and the attacker ran away. When defendant was questioned about this incident in December, he said that he had been urinating in a corner and saw the victim approaching. He admitted hitting her.

Later that same night, Martin Gatica was walking in the area of Latham Street and saw a man attack a woman. Gatica testified that the woman was on her knees and the man was grabbing her clothes and had a knife to her chest. Gatica confronted the attacker and the attacker left. The attacker had been wearing a ski mask and Gatica could

4

not identify him. Defendant later described this incident to the police. He said the victim was the sister of a person who beat him up. He admitted hiding in the bushes, grabbing her as she passed, and holding her down with a knife. Defendant also admitted having told her to take her clothes off. This third victim was never identified.

Victim 4 was out of the country at the time of trial. Her sister-in-law testified as to the incidents pertaining to the attack on her. She said that on April 6, 1999 Victim 4 came to her house, hysterical and out of breath. Victim 4 said that a man wearing a black ski mask came from the bushes on Latham Street carrying a knife, and that he attacked her and threw her to the ground. Victim 4 gave the same story to the police officers that came to investigate. She told them she had defended herself with her shopping bags. There were tears in the shopping bags and in Victim 4's shirt that were consistent with her story. The attack on Victim 4 occurred in the same location as the attack on Victim 2 the month before. In his statement to the police in December, defendant said Victim 4 was someone who had told him "bad things" in the past. He said that he hid in the bushes with a knife and that she fought him off with her shopping bags.

Victim 5 testified that she was visiting this country from Korea. On May 8, 1999 at around 8:35 p.m. she walked down Latham Street and saw a man standing behind a tree. His face was covered with a ski mask and he carried a knife, which Victim 5 described as eight to nine inches long. Victim 5 fled down the street. She screamed and threw the shopping bags she had been carrying over her shoulders as she ran. She felt a knife plunge into her right hip. The attacker ran away. The officer investigating the incident found a little "cropped out" area behind the bushes where the attack occurred. The location where Victim 5 was attacked was the same place Victim 3 had been attacked in April. In his statement to the police in December, defendant described the incident as the one with "the Chinese woman." He said that he hid in the bushes until she walked by, then he jumped, yelled, and swung a knife at her legs. Defendant claimed the

5

knife was a 10-inch knife he had taken from his job at Boston Market. He did not know if he had cut his victim. He said that she tripped and fell.

Defendant was stopped and questioned by a police officer on May 13, 1999 because he resembled an artist's sketch of the person suspected of the Latham Street crimes. There were no attacks in the Latham Street area for six months following this contact.

Then, on November 13, 1999 Victim 6 was walking on a nearby street when a person came from behind her and threw a bicycle on her. Victim 6 was unavailable to testify so the transcript of her testimony at the preliminary hearing was read into the record. She said that the man had grabbed her around the chest and threatened to take out a knife. He took her behind the bushes and told her to take her clothes off. Victim 6 offered him money, but he again told her to take her clothes off. He sat on her thighs and tried to take off her blouse. He put a hand over her mouth and she bit him, he hit her, and she screamed. Someone came along and the attacker ran away. Victim 6 could not identify her assailant because a hood had obscured his face. Defendant described this attack to the police. He said he threw the victim to the ground, ordered her to take her clothes off and described how she was "on all fours." Defendant claimed that if he had wanted to rape Victim 6 he could have done so because "there was time."

Victim 7 testified that on November 20, 1999 she and a friend were looking for a store in Mountain View. They had got off the bus and were walking along looking for the store when Victim 7's friend saw a man approaching quickly. She warned Victim 7, but it was too late. The man grabbed Victim 7 by the hair, put a 10-inch knife to her throat, and forced her into the bushes. He told her to take her clothes off and tried to force her to the ground. Victim 7 screamed. In the struggle, the attacker's hood came loose and when he tried to fix it, Victim 7 pushed him away from her and ran. Her attacker fled. In his December statement to the police, defendant admitted the attack on

6

Victim 7. He said he had threatened Victim 7 with a knife and he admitted telling her to take her clothes off.

###    C.    THE OPERATIVE PLEADING AND THE VERDICT

The prosecutor amended the information to conform to proof. The Fourth Amended Consolidated Information included 22 counts:

Victim 1 (3/24/97):

Count 1-Penetration with a foreign object (§ 289, subd. (a)) with special circumstances pursuant to section 667.61, subdivisions (a) and (e), personal use of a dangerous and deadly weapon (§ 12022.3, subd. (a)) and kidnapping (§ 207));

Count 2-Forcible rape (§ 261, subd. (a)(2)) with special circumstances as alleged in Count 1;

Count 3-Forcible sodomy (§ 286, subd. (c)(2)) with special circumstances as alleged in Count 1;

Count 4-Forcible rape (§ 261, subd. (a)(2)) with special circumstances as alleged in Count 1.

Victim 2 (3/15/99):

Count 5-Attempted forcible rape (§§ 664, 261, subd. (a)(2)) with an enhancement for use of a dangerous and deadly weapon (§ 12022.3, subd. (a));

Count 6-Assault with a deadly weapon (§ 245, subd. (a)(1)).

Victim 3 (3/15/99):

Count 7-Attempted forcible rape (§§ 664, 261, subd. (a)(2)) with an enhancement for use of a dangerous and deadly weapon (§ 12022.3, subd. (a));

Count 8-Assault with a deadly weapon (§ 245, subd. (a)(1)).

Victim 4 (4/6/99):

Count 9-Attempted forcible rape (§§ 664, 261, subd. (a)(2)) with an enhancement for use of a dangerous and deadly weapon (§ 12022.3, subd. (a));

Count 10-Assault with a deadly weapon (§ 245, subd. (a)(1)).

Victim 5 (5/8/99):

Count 11-Attempted forcible rape (§§ 664, 261, subd. (a)(2)) with an enhancement for use of a dangerous and deadly weapon (§ 12022.3, subd. (a));

Count 12-Attempted murder (§§ 664, subd. (a), 187).

Victim 6 (11/13/99):

Count 13-Kidnapping for rape (§ 209, subd. (b)) with an enhancement for use of a dangerous and deadly weapon (§ 12022, subd. (b)(1));

Count 14-Attempted forcible rape (§§ 664, 261, subd. (a)(2)) with an enhancement for use of a dangerous and deadly weapon (§ 12022.3, subd. (a));

Count 15-Assault with a deadly weapon (§ 245, subd. (a)(1)).

Victim 7 (11/20/99):

Count 16-Kidnapping for rape (§ 209, subd. (b)) with an enhancement for use of a dangerous and deadly weapon (§ 12022, subd. (b)(1));

Count 17-Attempted forcible rape (§§ 664, 261, subd. (a)(2)) with an enhancement for use of a dangerous and deadly weapon (§ 12022.3, subd. (a));

Count 18-Assault with a deadly weapon (§ 245, subd. (a)(1)).

Victim 8 (12/23/99):

Count 19-Attempted forcible rape (§§ 664, 261, subd. (a)(2)).

Victim 9 (12/23/99):

Count 20-Attempted premeditated murder (§§ 664, subd. (a), 187, 189);

Count 21-Attempted forcible rape (§§ 664, 261, subd. (a)(2)) with an enhancement for use of a dangerous and deadly weapon (§ 12022.3, subd. (a)).

Other:

Count 22-Possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a)).

The jury convicted defendant on all counts and found true all enhancements and special circumstances alleged with the following exceptions. The jury found defendant

8

not guilty of the attempted murder of Victims 5 and 9 but did find him guilty of the lesser included offense of assault with a deadly weapon (Counts 12 and 20). The jury found defendant not guilty of attempted forcible rape of Victim 8 (Count 19) and could not reach a verdict on the attempted forcible rape of Victim 9 (Count 21). A mistrial was declared as to the latter and the prosecution dismissed that count.

The trial court sentenced defendant on Counts 1 through 4 pursuant to section 667.6, subdivision (c) and sentenced him on all other counts pursuant to section 1170.1. Defendant received consecutive life terms on Counts 13 and 16 (kidnapping for rape) and a consecutive term of 25 years to life for Count 1 (penetration with a foreign object). Defendant also received an aggregate, consecutive term of 55 years on the remaining counts and enhancements.

### D.    ISSUES

Defendant raises the following issues on appeal:

1.    Did the trial court abuse its discretion under Evidence Code section 352 in admitting evidence of the attacks on Victim 2, Victim 4 and Victim 5?

2.    Was the evidence sufficient to support a finding that defendant had the specific intent to rape Victim 2, Victim 4, and Victim 5?

3.    Where there is insufficient evidence under the applicable standard to support the jury's finding that defendant committed the simple kidnapping of Victim 1 (§ 207), may we instead consider the finding a de facto determination that defendant had committed kidnapping for rape? (§ 209, subd. (b).)

4.    Defendant points out that abstract of judgment incorrectly indicates that he was sentenced to three terms of life without the possibility of parole rather than two indeterminate life terms for Counts 13 and 16, and one indeterminate term of 25 years to life on Count 1, all with the possibility of parole. In addition, the abstract of judgment

refers to the Count 13 offense as having occurred in 1997 when the correct date is 1999. The People concede these mistakes. [2]

### E.    DISCUSSION

*1.    Admissibility of the Evidence of Attacks on Victims 2, 4, and 5.*

Defendant was convicted of the attempted forcible rape of Victims 2 through 7. The charges relating to all the victims other than Victim 1 and Victim 9 were severed from the case when the trial began. When defendant chose to testify, his statements pertaining to the uncharged acts became admissible to the extent they were inconsistent with his trial testimony or otherwise constituted impeachment. (See *Harris v. New York* (1971) 401 U.S. 222; *People v. May* (1988) 44 Cal.3d. 309.) If admissible as prior inconsistent statements, the statements would also be admissible as substantive evidence of the crimes they revealed. (Evid. Code, § 1235.) Defendant does not disagree with this analysis, nor does he challenge the admissibility of evidence of the attacks on Victims 3, 6, or 7. He contends only that since the attacks on Victims 2, 4, and 5 did not have a sexual component (such as grabbing at their clothes or telling them to take their clothes off), evidence of these attacks was not probative of the only issue upon which he could be impeached, i.e., his intent to rape Victim 1 or Victim 9. Defendant argues that the probative value of the evidence of these attacks was at the most "very slight," so that the trial court abused its discretion in permitting the evidence as impeachment. The People contend that the evidence was properly admitted to impeach defendant's testimony at trial as allowed by California Constitution, article I, section 28, subdivision (d) and *People v. Wheeler* (1992) 4 Cal.4th 284, 296 (*Wheeler*).

---

[2] Defendant also argues that as to Counts 12 and 20 the jury was incorrectly permitted to make a special finding that defendant had personally used a dangerous and deadly weapon. (§ 12022, subd. (b)(1).) Since these findings had no effect on the judgment, we do not address this issue. (See § 1237.)

According to defendant, at the point at which he completed his testimony on direct examination his identity as the assailant of Victim 1 and Victim 9 had been established. DNA evidence identified him as the perpetrator of the rape of Victim 1. Victim 9 positively identified him because she knew him. Defendant argues that since his identity had been established, the only issue for which any of the uncharged conduct was relevant was the issue of whether he had the intent to rape either of these victims. In our view, the acceptable scope of impeaching evidence was not so circumscribed.

In order to constitute impeachment, the evidence does not necessarily have to controvert defendant's testimony on any one discreet issue. The jury is permitted to consider "any matter that has any tendency in reason to prove or disprove the truthfulness of [the witness's] testimony at the hearing." (Evid. Code, § 780.) That is, the prosecutor was entitled to put on evidence from which a jury might conclude that defendant was not to be believed. Therefore, so long as defendant's testimony raised a factual dispute over any of the elements of the charged offenses, his credibility was subject to attack.

Defendant did dispute the crimes that were charged. He admitted on direct examination that he might have had sex with Victim 1 but that he did not have sex by force. Therefore, he implied that if intercourse occurred, Victim 1 had consented to it. He flatly denied doing harm to Victim 9. He also testified that he was very "messed up" on alcohol and cocaine at the time of that attack, suggesting that he was incapable of forming the specific intent necessary to the attempted rape and murder charges. Therefore, even if we presume that the prosecution had conclusively established that defendant was the person who had intercourse with Victim 1, and that he was the person who cut Victim 9, defendant's credibility was nevertheless a fact in issue.

The attacks on Victims 2, 4, and 5 demonstrated immoral conduct. Evidence of such conduct is relevant to the issue of credibility and admissible, subject only to the court's discretion under Evidence Code section 352. (*Wheeler, supra*, 4 Cal.4th 284; and see Cal. Const., art. I, § 28, subd. (d).) *Wheeler* counsels that the offer of evidence of

11

immoral conduct for impeachment (as opposed to evidence of a felony conviction) often entails problems of proof and unfair surprise and evaluation of moral turpitude. "Hence, courts may and should consider with particular care whether the admission of such evidence might involve undue time, confusion, or prejudice which outweighs its probative value." (*Wheeler, supra,* 4 Cal.4th at pp. 296-297.) The trial court enjoys broad discretion in determining whether the probative value of evidence is outweighed by concerns of undue prejudice, confusion or consumption of time. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.) "Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]' (*People v. Jordan* (1986) 42 Cal.3d 308, 316.)" (*Id.* at pp. 1124-1125.) Keeping these rules in mind, we find no abuse of discretion.

When a felony conviction is offered for impeachment, the problems of proof, unfair surprise, and evaluation of moral turpitude are minimal because the conviction itself reliably proves the conduct, a party is unlikely to be surprised by the use of his or her own felony conviction, and the court determines moral turpitude from the " 'least adjudicated elements' " of the offense for which the witness was convicted. (*Wheeler, supra,* 4 Cal.4th at p. 297, fn. 7.) In this case, even without a felony conviction those problems were also minimal. The conduct was of the type that indisputably shows defendant's general readiness to do evil. (See *Gertz v. Fitchburg Railroad* (1884) 137 Mass. 77, 78; *People v. Castro* (1985) 38 Cal.3d 301, 314.) Even without evidence of sexual intent, the attacks on Victims 2, 4, and 5 substantively constituted the crime of assault with a deadly weapon, which has been determined to be a crime of moral turpitude. (*People v. Cavazos* (1985) 172 Cal.App.3d 589, 595.) "The average person walking down the street would believe that anyone who unlawfully attempts to injure another with a deadly weapon is guilty of some degree of moral laxity." (*Ibid.*)

12

Defendant's having jumped out of the bushes and attacked these women with a knife plainly demonstrates moral laxity. Proof of the acts was made by defendant's own confession, not solely on the allegations of the third parties. And there was no possibility of surprise because defendant was warned before trial began and before he actually took the stand that the prosecutor intended to use this evidence to prove that he was not telling the truth.

In addition to its relevance as impeachment, generally, the evidence directly contradicted defendant's testimony. The evidence tended to show defendant's planning and preparation as to both the sexual offenses and to the charge of attempted premeditated murder. As to the evidence of the attack on Victim 2, defendant told the police officers that he had seen her coming down the street so he hid and then he hit her. Defendant admitted that he hid in the bushes waiting for Victim 4, and that he threw her to the ground and tried to stab her with a kitchen knife. Defendant also admitted lying in wait for Victim 5 and when she walked by he jumped out in front of her and yelled and swung a knife at her. In short, the evidence was that on these three occasions defendant hid himself to surprise his victims and threatened them all with a knife. From that evidence a jury could reasonably conclude that he did the same thing in connection with his encounter with Victim 1 and that as to her, the encounter was not consensual as defendant suggested it must have been. A jury could also reasonably infer from evidence of these three attacks that defendant was also lying in wait for Victim 9, planning the attack rather than to believe, as defendant implied, that if he did cut her it was the result of his inebriated condition.

In sum, we cannot say that the trial court's decision to admit this evidence was arbitrary, capricious, or patently absurd. There was no abuse of discretion.

2.    *Sufficiency of the Evidence - Intent to Rape Victims 2, 4, and 5.*

Defendant argues that the convictions of attempted rape as to Victims 2, 4, and 5 must be reversed because, although there is substantial evidence that these women were

attacked, there is insufficient evidence that defendant harbored the specific intent to commit rape when he attacked them. The Attorney General argues that the evidence of circumstances surrounding the crimes is sufficient to support an inference that defendant intended to rape.

In order to support a conviction for attempted rape there must be substantial evidence that defendant specifically intended to engage in sexual intercourse with the victim. (*People v. Marshall* (1997) 15 Cal.4th 1, 36; *People v. Dillon* (1983) 34 Cal.3d 441, 452-453.) "Specific intent may be, and usually must be, inferred from circumstantial evidence." (*People v. Cole* (1985) 165 Cal.App.3d 41, 48.) In order to base a conviction upon circumstantial evidence, the jury must find that the facts and circumstances are not only entirely consistent with the theory of guilt but are also inconsistent with any other reasonable conclusion. (*Ibid.*) But this rule only applies to the fact finder. If the jury, by its verdict rejects the reasonableness of any conclusion pointing to innocence, and there is evidence to support the implied finding that guilt is the more reasonable of the two conclusions, then the reviewing court is bound by the finding of the jury. (*Ibid.*) Therefore, whether the evidence is direct or circumstantial, the relevant inquiry is the same. We view the record as a whole, in the light most favorable to the judgment. (*People v. Johnson* (1980) 26 Cal.3d 557, 576-578.) We accept any reasonable interpretation of the evidence that supports the judgment so long as it is evidence of ponderable legal significance, reasonable in nature, credible, and of solid value. (See *People v. Johnson, supra,* 26 Cal.3d at p. 576; *People v. Holt* (1997) 15 Cal.4th 619, 668-669.) Unless it clearly appears that "upon no hypothesis whatever is there sufficient substantial evidence to support it" we cannot set aside the judgment. (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)

Evidence of prior acts of misconduct is probative of a person's intent on another occasion. The more similar the other acts are to the act being analyzed, the greater their probative value will be. The reasoning stems from an intuitive understanding that if

14

something happened for a particular reason on one or more separate occasions, it is likely that it happened for the same reason on the occasion being analyzed. (See *People v. Robbins* (1988) 45 Cal.3d 867, 879-880, citing 2 Wigmore, Evidence (Chadbourn rev. 1979) § 302, at p. 241; see also *People v. Carpenter* (1997) 15 Cal.4th 312, 379.) The rationale for admitting prior acts to show intent applies equally to acts occurring before or after or around the same time as the occasion in issue.

Here we have not just one or two similar acts from which to infer defendant's intent on the three occasions he challenges. We have one rape (Victim 1) and three attempted rapes (Victims 3, 6, and 7) that were carried out in a fashion that was nearly identical to the manner in which defendant commenced the attacks on Victims 2, 4, and 5. Defendant raped Victim 1 in 1997 by jumping out at her from behind the bushes. He threatened her with a knife, pulled her to a secluded area, forced her to her hands and knees, and raped her from behind. Every other attack began in almost exactly the same way. Defendant leapt from the bushes surprising his victim; he hid his face, and he threatened her with a knife. He never robbed the victim or snatched purses or parcels. In four of the seven convictions for rape or attempted rape, after defendant had overpowered his victim, he told her to take her clothes off, grabbed her, or on the one occasion he actually accomplished the rape. In each of the three cases defendant challenges the assault was fortuitously aborted by a passerby or by the victim's vigorous resistance. Victim 2 said that a man came by within about 30 seconds of the attack. Victim 4 screamed and defended herself with her shopping bags. Victim 5 screamed and ran away, throwing everything she was carrying over her shoulders at her assailant. Thus, in none of these three cases did defendant ever overpower the victim and so did not have the opportunity, as he did in the other four cases, to proceed with his intended course of action.

*Walters v. Maass* (9th Cir. 1995) 45 F.3d 1355 (*Maass*), upon which defendant relies, is not applicable here. In *Maass*, the defendant was convicted of attempted rape

and attempted kidnapping based upon evidence that he approached a teenage girl and asked her to get in his truck to help him find a lost German Shepard dog. Defendant's intent was inferred from his prior conviction for kidnapping and rape in which he had used exactly the same modus operandi. The Ninth Circuit determined that "[c]ertainly Walters' intent is manifested by (1) evidence regarding his use of the German shepherd ruse in 1981 to kidnap, rape, and sodomize another thirteen-year old girl, (2) his persistent attempts to lure the victim into his truck using the same ruse, (3) his actions in following the victim home, (4) his strange speech patterns when he talked to the victim's mother, and (5) his statements to the police officer." (Id. at p. 1359.) The court determined, however, that under the Oregon law of attempt, the defendant's attempt to entice the victim into his truck did not constitute a substantial step toward the commission of the crime of rape. (Id. at p. 1360.) The issue here is not whether defendant's conduct was sufficient to constitute an attempt, but simply whether there is sufficient evidence to support a finding that defendant harbored the specific intent to commit rape. Even the Maass court felt that the single prior conviction was evidence of intent.

The evidence of defendant's intent as to Victim 2 is further supported by the fact that later on the same night he attacked Victim 2 he also attacked Victim 3. In his second attack of the night defendant was able to take his victim to a secluded place behind the bushes and get her on her hands and knees on the ground before a passerby interrupted the attack. The Victim 3 attack also provides support for a finding that defendant intended to rape Victim 5 because he attacked Victim 5 from the very same cropped out place in the bushes where he was seen attacking Victim 3.

Defendant's confession provides additional support for the conclusion that he intended to rape Victims 2, 4, and 5. In his interview with officers Vieyra and Hsiung, defendant independently raised the issue of rape more than once. As to Victim 9, defendant said: "Um-hum, I went over there by myself; but, no, but, no . . . because they

think I wanted to rape her, that's what they say. But, no, why would I. I have a lot of girlfriends, too, I have a lot of girlfriends, so I have no need to be doing that." In reference to the attack on Victim 8, defendant said: "Yes. No, well, I . . . like I tell you, I did. . . . I mean, I do accept, but what I don't like is that, I mean, that they're going to say that [it was] for the purpose of raping them." Officer Vieyra said: "No?" To which defendant responded, "Me, for the purpose of raping a woman, not me. That's why I have a big mouth, to speak up." Defendant's unprompted references to rape could reasonably be construed as demonstrating a general consciousness of guilt in that regard.

The foregoing is sufficient evidence from which a jury could reasonably have drawn the inference that defendant intended to rape Victim 2, Victim 4, and Victim 5.

### 3.    The Kidnapping Special Circumstance (Counts 1-4).

Section 667.61 sets forth a harsher sentencing scheme for certain sex crimes perpetrated by force, including each of the offenses alleged in Counts 1 through 4. Subdivision (a) of section 667.61 provides: "A person who is convicted of [a specified offense] under one or more of the circumstances specified in subdivision (d) or under two or more of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for 25 years except as provided in subdivision (j)." Subdivision (b) reduces the sentence to 15 years to life if only one of the circumstances specified in subdivision (e) is found true. Among the circumstances specified in subdivision (e) are kidnapping in violation of section 207, 209, or 209.5, and use of a dangerous or deadly weapon or firearm in violation of section 12022, 12022.3, 12022.5, or 12022.53.

Counts 1 through 4 concerned the 1997 attack on Victim 1. As to each of these counts the prosecution alleged two special circumstances: use of a dangerous or deadly weapon (§ 12022.3, subd. (a)) and simple kidnapping (§ 207). The trial court imposed the indeterminate term of 25 years to life for Count 1 based upon the jury's having found both these circumstances to be true. Defendant argues that there is insufficient evidence

17

to support the jury's finding that he kidnapped Victim 1 under the applicable test for simple kidnapping. Since there is evidence to support only one of the alleged special circumstances, defendant claims his sentence on this count should be reduced to 15 years to life pursuant to section 667.61, subdivision (b).

People v. Caudillo (1978) 21 Cal.3d 562 (Caudillo) stated the former rule for simple kidnapping (§ 207). Under Caudillo, the sufficiency of the evidence to support the element of asportation depended upon the distance the victim was moved. (Caudillo, supra, 21 Cal.3d at p. 574.) Asportation of 75 feet or 90 feet was insufficient as a matter of law to support a conviction for simple kidnapping. (People v. Brown (1974) 11 Cal.3d 784, 789; People v. Green (1980) 27 Cal.3d 1, 67.) People v. Martinez (1999) 20 Cal.4th 225 (Martinez) overturned Caudillo. Now the trier of fact may consider factors such as whether the movement increased the risk of harm and vulnerability of the victim, in addition to the distance the victim was moved. (Id. at p. 235.) Because Martinez was an enlargement of the kidnapping statute, the new rule was not retroactive. (Id. at p. 241.) The attack on Victim 1 occurred in 1997, so Martinez does not apply. Since defendant dragged Victim 1 only 35 to 40 feet into the bushes, there is insufficient evidence under Caudillo to support a finding that defendant had committed a simple kidnapping in violation of section 207.

The Attorney General concedes that there is insufficient evidence to support a finding of simple kidnapping of Victim 1 but argues that the jury's finding that defendant had kidnapped her coupled with its guilty verdict on the substantive sexual offenses, constitutes a de facto finding that defendant had kidnapped Victim 1 for the purpose of committing a sexual offense (§ 209, subd. (b)(1)). Section 209 is another of the special circumstances specified by section 667.61.[3] Therefore, if the jury effectively found

---

[3] Defendant counters that the People's position is contrary to the recent decision in People v. Mancebo (2002) 27 Cal.4th 735 (Mancebo). We do not find Mancebo to be (continued)

18

defendant guilty of violating section 209, his sentence of 25 years to life may stand. We are not persuaded.

*People v. Jones* (1999) 75 Cal.App.4th 616 (*Jones*), upon which the Attorney General relies, is distinguishable. In *Jones*, the jury found the defendant guilty of kidnapping during the commission of a carjacking. (§ 209.5.) On appeal, the parties agreed that there was insufficient evidence to support the conviction because the offense of kidnapping during the commission of a carjacking requires a completed carjacking and no completed carjacking had taken place. (*Jones, supra*, 75 Cal.App.4th at p. 624.) The appellate court determined, however, that the jury's findings supported the lesser-included offense of attempted carjacking. (*Id.* at pp. 627-628.) The trial court had instructed the jury, in connection with the original charge, that the " 'specific intent to facilitate the commission of carjacking must be present when the kidnapping commences.' " (*Id.* at p. 627.) The court had also instructed the jury " 'it is not necessary to establish that this purpose was accomplished. The crime is complete if the kidnapping is done for that purpose.' " (*Id.* at p. 628.) Although the appellate court presumed this latter instruction was incorrect insofar as it applied to the kidnapping for carjacking offense, since the jury was so instructed and returned a guilty verdict, the jury effectively found a direct but ineffectual act done towards the commission of the carjacking, i.e., the forcible moving of the victim with the intent to carjack. (*Ibid.*)

entirely on point. In *Mancebo*, the jury had convicted the defendant of sex offenses against two victims and found true two special circumstances as to each victim. After conviction, the trial court substituted a multiple victim special circumstance (§ 667.61, subd. (e)(5)), which had not been pleaded, for the gun-use circumstance that had appeared in the pleading. The court then used the gun-use finding to further enhance the sentence under another code section. (*Mancebo, supra*, 27 Cal.4th at p. 740.) The primary basis for reversal was that the defendant had no notice that the facts alleged in the information would be used to provide an even harsher sentence than that which appeared from the pleading. (*Id.* at p. 753.) Notice is not an issue that is before us in this case.

Therefore, by convicting the defendant of kidnapping during the commission of carjacking under the instructions it was given, the jury determined both the elements required to prove attempted carjacking: (1) the specific intent to facilitate the commission of carjacking and (2) a direct act done towards the commission of the offense. (*Ibid.*)

The same is not true here. Defendant was charged in Counts 13 and 16 with the substantive crime of kidnapping to commit rape. (§ 209, subd. (b)(1).) In connection with those counts, the court instructed the jury in the language of CALJIC No. 9.54 (1998 Revision). Among other things, the jury was told that it must determine: "[T]he movement of that person was caused with the specific intent to commit rape, and the person causing the movement had the required specific intent when the movement commenced." But this instruction applied only to Counts 13 and 16. A similar instruction would have to have been given in connection with Counts 1 through 4 in order for the jury to have made findings sufficient to support an allegation that the kidnapping of Victim 1 was undertaken with the requisite specific intent. No such instructions were given.

As to the substantive crime of Count 1, penetration, the jury was informed that proof of the crime required proof that "[t]he penetration was done with the purpose and specific intent to cause sexual arousal, gratification, or abuse." No specific intent is required for the rape or sodomy counts. As to the simple kidnapping special circumstance, the trial court instructed the jury that in order to prove that allegation "the following elements must be proved: [¶] 1. A person was moved by the use of physical force, or by any other means of instilling fear; [¶] 2. the movement of the other person was without her consent; and [¶] 3. The movement of the other person in distance was substantial in character." Therefore, in finding that defendant had kidnapped Victim 1, the jury did not also find that defendant did so with the specific intent to commit the

specified sexual offense because, unlike the jury in *Jones*, the jury was never asked to decide that fact.

There is insufficient evidence to support the finding of kidnapping in connection with Counts 1 through 4. Defendant does not challenge the true finding relating to his use of a knife. Therefore, since there is sufficient evidence to support only one special circumstance, the applicable sentencing provision requires that defendant's sentence on Count 1 be reduced to 15 years to life. (§ 667.61, subd. (b).) [4] Our decision does not affect the sentences imposed on Counts 2 through 4. (§ 667.61, subd. (g).)

### F.     DISPOSITION

We hereby strike the Penal Code section 667.61, subdivision (a) enhancement imposed in connection with Count 1 and impose in its place an enhancement pursuant to Penal Code section 667.61, subdivision (b), thereby reducing defendant's sentence on Count 1 to 15 years to life. The superior court is ordered to prepare an amended abstract of judgment incorporating the above changes. As so modified, the judgment is affirmed. We remind the court to insure that the amended abstract correctly reflects that all three life sentences imposed in this case include the possibility of parole and that the Count 13 offense took place in 1999. The superior court shall forward a copy of the amended abstract to the Department of Corrections.

---

[4] Because we have determined that there is insufficient evidence to support the finding of kidnapping as to Counts 1 through 4, we do not reach defendant's alternative argument relating to instructional error.

_____
                    Premo, Acting P.J.


WE CONCUR:


_____
         Elia, J.


_____
         Rushing, J.


People v. Ortega
H023370

**CASE NAME:**    PEOPLE V. ORTEGA
**CASE NO.:**      (H023370)
**COURT:**         CALIFORNIA SUPREME COURT

PROOF OF SERVICE BY MAIL

I declare that I am employed in the County of Sacramento, California. I am over the age of eighteen years and not a party to the within cause; my business address is 331 J Street, Suite 200, Sacramento, CA 95814.

On the dated below I served the PETITION FOR REVIEW on the parties in said cause, by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Sacramento, California addressed as follows:

**Office of Attorney General**
455 Golden Gate Avenue  Suite 11,000
San Francisco, CA  94102-3365
[Attorney for Respondent]

**SANTA CLARA CO. DIST. ATTY.**
70 West Hedding
San Jose, CA  95113-1090

**Sixth District App. Program**
100 N. Winchester Blvd.  Suite 310
Santa Clara, CA  95050

**CLERK, Sup. Ct. of Santa Clara Co.**
190 West Hedding
San Jose, CA  95113-1090

**SAMUEL ORTEGA**
(See attached Declaration)

**J.J. KAPP**
270 Grant Ave.
Palo Alto, CA  94307

**CLERK, SIXTH DISTRICT
COURT OF APPEAL**
333 W. Santa Clara St.  No. 1060
San Jose, CA  95113-1717

There is delivery by United States mail at each of the places so addressed, or there is regular communication by mail between the place of mailing and each of the places so addressed.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on _____, 2002, at Sacramento, California.

_____

## DECLARATION

I, CHARLES M. BONNEAU, am the attorney for appellant SAMUEL

ORTEGA.

I have received his written and oral request that he not receive copies of the

briefing in this appeal, under Rule 37, California Rules of Court.

Date: December 23, 2002

_____

CHARLES M. BONNEAU

# EXHIBIT 5

Court of Appeal, Sixth Appellate District - No. H023370
**S112446**

# IN THE SUPREME COURT OF CALIFORNIA

### En Banc

THE PEOPLE, Plaintiff and Respondent,

v.

SAMUEL ORTEGA, Defendant and Appellant.

Petition for review DENIED.

**SUPREME COURT**
# FILED

JAN 2 9 2003

Frederick K. Ohlrich Clerk

DEPUTY

DOCKET
ADM-SF _____
CIV-SF _____
CR-SF _SF200_ /DA//65
Entered by _pcs_
Date _1/30/03_

GEORGE

Chief Justice