# EXHIBIT 8

MC-275

Name __SAMUEL ORTEGA__

Address __MULE CREEK STATE PRISON #A1-140-U__

__P.O. BOX 409020__

__IONE, CA. 95640.__

CDC or ID Number __#T-24740.__

**FILED**

SEP 19 2005

Court of Appeal Sixth App. Dist.
MICHAEL J. YERLY, Clerk

BY _____ DEPUTY

## CALIFORNIA COURT OF APPEAL,
## IN AND FOR SIXTH DISTRICT.
*(Court)*

__SAMUEL ORTEGA,__
Petitioner

vs.

__ROSEANNE CAMPBELL, et al.,__
Respondents

**PETITION FOR WRIT OF HABEAS CORPUS**

# H029326

No. _____
*(To be supplied by the Clerk of the Court)*

BB152071; B38947307
X-ref: H023370, H029129

## INSTRUCTIONS — READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]

**PETITION FOR WRIT OF HABEAS CORPUS**

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56 5, 201(h)

American LegalNet, Inc.
www.USCourtForms.com

**This petition concerns:**

☒ A conviction                     ☐ Parole

☒ A sentence                       ☐ Credits

☐ Jail or prison conditions        ☐ Prison discipline

☒ Other *(specify):* 1 ST, 5TH, 6TH, 8TH, AND 14TH AMENDMENTS' VIOLATIONS

1. Your name: SAMUEL ORTEGA

2. Where are you incarcerated? MULE CREEK STATE PRISON, IONE, CA. 95640.

3. Why are you in custody? ☒ Criminal Conviction   ☐ Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

   P.C. 667.61 (a)(e), 207, 12022.3, 12022.8, 12022 (b)(i), 12022.7 (a), 209 (b).

b. Penal or other code sections: _____

c. Name and location of sentencing or committing court: Superior Court of California, Santa Clara, # 190 West Hedding, San Jose, CA. 95113-1090.

d. Case number: B9947307/BB152071.

e. Date convicted or committed: 5/2/01.

f. Date sentenced: 7/20/01.

g. Length of sentence: life consecutive to life consecutive to 25 yrs to life consecutive to 55 yrs.

h. When do you expect to be released? _____

i. Were you represented by counsel in the trial court? ☒ Yes.   ☐ No.   If yes, state the attorney's name and address:

   J. J. KAPP, Attorney At Law, # 270 Grant Avenue, Palo Alto, CA. 94307.

4. What was the LAST plea you entered? *(check one)*

   ☒ Not guilty   ☐ Guilty   ☐ Nolo Contendere   ☐ Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   ☒ Jury   ☐ Judge without a jury   ☐ Submitted on transcript   ☐ Awaiting trial

6. **GROUNDS FOR RELIEF**
**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

_____

_____

_____

_____

a. Supporting facts:
Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where).* *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

Petitioner, SAMUEL ORTEGA, is a state prisoner under the custody of Warden, Roseanne Campbell, at Mule Creek State Prison, Ione, CA.; pursuant to a judgment of con-viction rendered by the Superior Court of Santa Clara County in matter: 89947307/88152071. Petitioner hereby petitions this Court for a writ of habeas corpus, an evidentiary hearing, and an Order To Show Cause on respondents. By and through this verified petition, the petitioner humbly, and so very respectfully brings to this Court's attention that the California Superior Court - Santa Clara County, on 9-1-05, made "an unreasonable decision, contrary to clearly established law," in denying petitioner's petition for writ of

b. Supporting cases, rules, or other authority (optional):
(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)

_____

_____

_____

_____

7. **Ground 2 or Ground _____** *(if applicable)*:

_____

_____

_____

_____

a. Supporting facts:

habeas corpus, # BB152071, (See: Exhibit-A, att.), in violation of petitioner's Due Process and Equal Protective Clauses guaranteed and secured under the 5th and 14th Amendments to the United States Constitution, amounting to a violation of all of petitioner's constitutional-claims. The Court has jurisdiction pursuant to Penal Code sections §§§1473, 1474, and 1484; and art. I, § 9, cl. 2 U.S. Const., art. I, § 11; and art. VI, § 10 of Cal. Const. This Court has authority to review the constitutional-claims raised herein under In re Harris, (1993), 21 Cal. Rptr. 2d 373; the free standing actual innocence-clause under Herrera v. Collins, (1993), 113 S.Ct. 853; the miscarriage of justice gateway that was established under Schlup v. Delo, (1995), 115 S.Ct. 851....
(See: Additional pages with facts.)

b. Supporting cases, rules, or other authority:

_____

_____

_____

_____

_____

8. Did you appeal from the conviction, sentence, or commitment? ☒ Yes. ☐ No.    If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):
California Court of Appeal - Sixth Appellate District Court.

b. Result: DENIED.    c. Date of decision: 11-22-02.

d. Case number or citation of opinion, if known: H-023370.

e. Issues raised: (1) Lack of evidence as to counts 5, 9, and 11; Improperly
(2) Admitted Evidence as to counts 5, 6, 9, 10, 11, and 12; Finding
(3) of Knife use as to counts 12 and 20 must be reversed; and
special circumstance Kidnapping as to counts 1-4 was insufficient.

f. Were you represented by counsel on appeal? ☒ Yes. ☐ No. If yes, state the attorney's name and address, if known:
Charles M. Bonneau #980 Ninth Street, Ste. 1400, Sacramento,
CA. 95814.

9. Did you seek review in the California Supreme Court? ☒ Yes. ☐ No. If yes, give the following information:

a. Result: DENIED    b. Date of decision:

c. Case number or citation of opinion, if known:

d. Issues raised: (1) SIMILAR.

(2)

(3)

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:
Petitioner received ineffective assistance of trial and appellate
counsels in violation of the 6th and 14th Amendments to
the United States Constitution.

11. Administrative Review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:
N/A.

b. Did you seek the highest level of administrative review available? ☐ Yes. ☐ No.
*Attach documents that show you have exhausted your administrative remedies.*

MC-275 [Rev. January 1, 1999]    PETITION FOR WRIT OF HABEAS CORPUS    Page five of six

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or **issue** in any court?  ☒ Yes. If yes, continue with number 13.  ☐ No. If no, skip to number 15.

13. a. (1) Name of court: Superior Court of California- Santa Clara County.

   (2) Nature of proceeding (for example, "habeas corpus petition"): habeas corpus petition.

   (3) Issues raised: (a) Ineffective Assistance of Trial and Appellate

   (b) Counsels in violation of the 6th and 14th Amendments.

   (4) Result (Attach order or explain why unavailable): DENIED. (EXHIBIT-A, att.)

   (5) Date of decision: 9/2/05.

 b. (1) Name of court: _____

   (2) Nature of proceeding: _____

   (3) Issues raised: (a) _____

   (b) _____

   (4) Result (Attach order or explain why unavailable): _____

   (5) Date of decision: _____

 c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

N/A.

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

Petitioner is a non-English speaker, a layman, and CDC prevented him from receiving his transcripts on appeal.

16. Are you presently represented by counsel?  ☐ Yes.  ☒ No. If yes, state the attorney's name and address, if known:

_____

17. Do you have any petition, appeal, or other matter pending in any court?  ☐ Yes.  ☒ No. If yes, explain:

_____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

This is the proper forum per Cal. Const. Art. VI, Sec. § 10.

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: 9-12-05.

▶ _Samuel Ortega_
(SIGNATURE OF PETITIONER)

## Additional Pages/Facts:

gateway that was established under Schlup v. Delo, (1995) 115 S.Ct. 851; and to issue a writ to ensure that the miscarriages within its reach are surfaced, and corrected. (Harris v. Nelsen, (1969), 89 S.Ct. 1082, 1086, 22 L.Ed. 2d 218.) A prima facie case for relief is required in the deter-mination for an Order To Show Cause to issue, (In re Viscotti, (1996), 14 Cal. 4th 325, 334, 58 Cal. Rptr. 2d 801), and a habeas petitioner bears the burden of proof upon which relief may be granted. (In re Hochberg, (1970), 2 Cal. .3d 870, 876, fn. 4, 87 Cal. Rptr. 681.) Petitioner also is aware of the "AEDPA" court dead line, and hereby, for future reference, invokes that he 'is' entitled to "tolling" due to the fact that prison officials deprived petitioner of his transcripts by returning them back. Equitable tolling therefore is warranted in this case because; "[a]n inmate proceeding pro se cannot reasonably be ~~expected~~ to timely pre--pare and file a habeas corpus petition without access to his legal files." (Spitsyn v. Moore, 345 F.3d 796, 799, at p. 801, Id.), (9th Cir. 2003). Thus, "equitable tolling may be appropriate where a prisoner ha[s] been denied access to his legal files." Id. (see also: Lott v. Mueller, 304 F.3d 918,

—|—

924-25, Cal. Cir. 2002)) A habeas petitioner is so entitled to equitable tolling, "if extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." (Miles v. Prunty, 187 F.3d 1104, 1107, Cal. Cir. 1999).)

Petitioner hereby very respectfully petitions for justice to be served; for the following relief:

A). Grant the enclosed petition for writ of habeas corpus;

B). Hold an evidentiary hearing in accord-ance to the law. (Rose v. Superior Court, 96 Cal. Rptr. 2d 843, (Cal. App. 2 Dist. 2000); In re Vargas, 100 Cal. Rptr. 2d 265, (Cal. App. 2d Dist. 2000).)

## I.

## GENERAL LAW AS TO INEFFECTIVE ASSISTANCE OF COUNSEL:

As a general proposition, there are two components to a claim by an appellant that his counsel's assista-nce was so defective as to require a reversal of conviction. (In re Fields, (1990), 51 Cal. 3d 1063, 1069). The first component is that the appellant must show that counsel's performance was deficient. (In re Marquez, (1992), 1 Cal. 4th

— 2 —

584, 602; citing to Strickland v. Washington, (1984), 466 U.S. 668, 687.) This requires a showing that counsel's representation fell below an objective level of reasonableness." (Strickland, ibid., at p. 688.)

The second component of an appellant's proof of incompetence is a showing of prejudice resulting from counsel's alleged deficiencies. Appellant must show more than defects and imperfections in the representation. He must be able to show that; "...[t]here is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." (In re Marquez, supra, 1 Cal. 4th at 603; citing to In re Fields, supra, 51 Cal. 3d at 1070.) Regarding this second component the basic procedure is for the reviewing court to compare the actual trial with a hypothetical trial that would have taken place had counsel done his/or her job in a professional manner. (Marquez, id., at 604.) In evaluating an appellant's showing of incompetence, the reviewing court must afford great deference to the tactical decisions of trial counsel. "A fair assessment of an attorney performance requires that every effort be

-3-

made to eliminate the distorting effect of hindsight, to reconstruct the circumstances of counsel's challenged behavior, and to evaluate the conduct from counsel's perspective at the time." (In re Marquez, supra, 1 Cal.4th 603.) In People v. Cox, (1991), 53 Cal.3d 618, 656, citing to People v. Fausto, (1982), 135 Cal.App.3d 729, 139, the Court stated; ".. merely tactical errors by counsel are not deemed reversible, for the decision in the midst of trial cannot be second guessed by the hindsight of an appellate court." The court also made it clear that the reviewing court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, "viewed at the time of counsel's conduct, not at the time of the review." (Cox., ibid.) There are any number of cases that stand for the above general proposition that the tactical decisions of trial counsel, as long as they are based upon some true tactical consideration, as opposed to ignorance/or neglect, will not be subject to reversal by the reviewing court. These tactical considerations may include failure to object to the admission of inculpatory matters, and failure to call certain witnesses, as long as there was a true tactical reason to do so. (People v. Kelley, (1992), 1 Cal.4th 495.) However,

−4−

1  the deference to trial counsel stated above is not with-
2  out limits. The California Supreme Court in In re
3  Jones, (1996), 13 Cal. 4th 552, 561-62, clearly set forth
4  those limitations; "deference is not abdication. The presu-
5  mption should never be used to insulate counsel's
6  performance from meaningful scrutiny, and
7  thereby automatically validate challenged acts
8  or omissions." It is the position of the petitioner
9  that the acts, and omissions of trial, and of
10  appellate counsels in this matter were not
11  simply tactics that did not work. They were
12  not creations of appellate hindsight, or revisio-
13  nism. The actions of counsel in this case
14  cannot be explained in terms of tactics.
15  They were the result of ineffective assistance of
16  counsel, which deprived petitioner of a fair trial
17  by failing to properly investigate witnesses, by
18  failing to present defense, failing to obtain its
19  own expert witnesses, failing to object to a
20  multitute of violations, and investigate other
21  matters pertinent to the trial, and sentence.
22  Petitioner's Claim for relief lies directly in the
23  center of the Sixth Amendment to the United
24  States Constitution, and its guarantees that,
25  "...in all criminal proceedings, the accused shall
26  enjoy the right to have assistance of counsel
27  for his defense." This right is absolutely essenti-
28  al to; "...assuring fairness in the adversary

—5—

criminal process." (Wheat v. United States, (1987)
487 U.S. 153, 158, 108 S.Ct. 1692, 1690.) The law is
abundantly clear that this counsel must be comp-
etent, must be working effectively for the
defendant, or the adversarial process itself is
at risk, and a fair trial is not possible. (See:
Strickland v. Washington, (1984), 466 U.S. 668, 689,
104 S.Ct. 2052, 2054.)
The court in In re Robbins, (1998), 18 Cal.4th 770,
810-11, held that, "[o]ne who asserts ineffective
representation by counsel must establish both
the objectively inadequate performance of
that counsel, and prejudice, (Strickland v.
Washington, (1984), 466 U.S. 668, 687-696] [trial
counsel]; In re Harris, (1993), 5 Cal. 4th 813, 833,
["Similar concepts have been used to measure the
performance of appellate counsel."].)... As the
high court has observed, appellate counsel, (and,
by analogy, habeas corpus counsel as well), performs
properly and competently when he/or she
exercises discretion, and presents only the strong-
est claims instead of every conceivable claim. (See
Jones v. Barnes, (1983), 463 U.S. 745, 752; Smith
v. Murray, (1986), 477 U.S. 527, 536.)
   Petitioner alleges ineffective assistance of
trial counsel, and ineffective assistance of
appellate counsel, in violation of petitioner's
rights guaranteed and secured under both the

— 6 —

5th, 6th, and 14th Amendments to the United States Constitution, and parallel, California Constitution, in that such counsel's ineffective performances, as discussed above, is what occurred in this case, that counsels' performances were such that the adversarial process was disruptive and petitioner being deprived of a valid defense to the charges, did not get a fair trial, and/or was not represented properly vis-a-vis, the sentencing, and in the first appeal as of right, in violation of the 5th, 6th, and 14th Amendments to the Constitution of the United States. The obligation of trial counsel does not begin at the court house door. Counsel has an affirmative obligation to investigate potential defenses, locate witnesses, to properly employ an investigator, and to make proper use of this investigation in trial. (In re Jones, (1996), 13 Cal. 4th 552, 565.)

Petitioner alleges he received ineffective assistance of trial counsel, in violation of the Sixth Amendment to the United States Constitution, in that trial counsel, Mr. J.J. Kapp, failed to call an independent expert witness on "DNA", instead he took it upon himself to act as an expert in cross-examining, Ms. Denise Wong, Cynthia Hall, and nurse Patricia Crane, and Dr. Richard Goode, M.D.,.

—7—

Trial counsel was ineffective in not retaining the services of his own independent expert, to cross examined the above mentioned prosecutor's expert witnesses, but rather counsel chose to call as his expert witness "for effects on drugs," Mercy Carde ma, (RT p. 766, ln. 22-28), of the Santa Clara County Crime Laboratory, and this ineffectiveness was prejudicial to petitioner, in that trial counsel failed to rebut forensic evidence of the alleged rapes. (Thompson v. Calderon, 120 F.3d 1045.), (Evidence Code sec. §730 & 952).

Trial counsel was ineffective in failure to not file a "Motion For New Trial," pursuant to Penal Code section §1181, subdivision (6), due to the fact that no credible evidence within Jackson vs. Virginia, and the Corpus Delicti existed as to counts #7, #8, involving an alleged Jane Doe; #9, #10, involving Azaila, M., whom did not testify at trial; and counts #13, #14, #15, involving Naylee, G., as well. (People v. Robarge, (1953), 41 Cal. 2d 628, 634.), and the attempted murder allegations on the other alleged victims since no intent to kill was proven which is an essential element. (People v. Bland,

-8-

1. (2002), 28 Cal. 4th 313; People v. Dickens, D.A.R.,
2. Wednesday, July 6th 2005, at p. 8113.)
3. Trial counsel was ineffective in failure to alle-
4. -ge a "Thrid Party Culpability-defense," and
5. failed to conduct an investigation of one Luis
6. Ochoa, whom had been identified by one of the
7. victims as her assailant, and rapist, (RT p. 123,
8. ln. 2-6, p. 144-45, p. 123, ln. 12-23), of the March
9. 1997-incident. (RT p. 125, ln. 22-27.)
10. Trial counsel was ineffective in agreeing with
11. the prosecutor not to ask the alleged-victims
12. about their sexual conducts, in violation of
13. the Confrontation Clause under the Sixth
14. Amendment to the United States Constitu-
15. -tion. (RT p. 127, ln. 3-8), (La Joie v. Thomp-
16. -son, D.A.R., Feb. 1st, 2000, p. 1170, (98-3591a))
17. Trial counsel was ineffective in entering a
18. waiver of a hearing without petitioner's perso-
19. -nal consent, in violation of petitioner's Due
20. Process Clause under the 5th and 14th
21. Amendments to the United States Constitution,
22. "right to be present at all critical stages of
23. the Court proceedings." (RT p. 163, ln. 4-10.)
24. Trial counsel was ineffective in failure to
25. argue that the alleged-victim, Naylee,
26. G.; was a 17-year old at the time of the
27. alleged offense of November 13th, 1999;
28. and the charge was not properly alleged

—9—

1. alleged in the information by the prosecutor,
2. in that the Ex Post Facto Clause forbids
3. revival of a previously time-barred charge
4. against a minor. (Penal Code § 803 (g),(West
5. Supp. 2003; Stogner v. California, No.: 01-
6. -1757.)
7. Trial counsel was ineffective for failure to
8. file a Motion For Mistrial on the basis
9. that it became clear that the jury was
10. going to be asked to convict on the
11. basis of either an incident shown by
12. the preliminary hearing/or another not
13. addressed at preliminary hearing. (People
14. v. Burnett, 83 Cal.Rptr.2d 629.),(RT p.661,
15. ln. 1-6; p. 680-81, ln.1-13; p. 682, ln. 20-24; p.
16. 683, ln. 1-17.)
17. Trial counsel was ineffective for failure to
18. investigate drug-use, mental deficiency,
19. fatigue; and the contents of the 'coca
20. cola, given by investigators to petitio-
21. -ner during investigation, to determine
22. waiver of Miranda rights, (RT p.681, ln.18-
23. -24),(Shackleford v. Hubbard, 234 F.3d
24. 1072.) and was ineffective in failure to
25. call the psychiatric whom examined the
26. petitioner.

II

27.
28. Petitioner alleges Prosecutorial Misconduct,

and violation of his Confrontation Rights, as
found and guaranteed and secured under
the 5th, 6th, and 14th Amendments to
the United States Constitution, in
that the prosecution failed to meet
its "good-faith-effort" to obtain the
eyewitness's presence, and in violati-
on of West's Ann. Cal. Evid. Code §
§1291, in that the prosecutor did not
attempted to locate the alleged victim
Azalea M., whom apparently went to
Mexico, instead prosecutor used the
hearsay testimony of one Juana C.,
her sister-in-law, as well as the hear-
-say testimonies of Officers Ruben
Gonzales, and Dorene Hansen, (RT p. 812-
829, RT p. 905-16, RT p. 917-19.),(People v.
Sandoval, 105 Cal. Rptr. 2d 504, CCal.App.
.3 Dist. 2001) The prosecutor had other
options available such as the "Treaty
on Cooperation Between the United
States of America, and the United
Mexican States for Mutual Legal
Assistance", - effective May 3rd, 1991;
to compel her attendance; but the prose-
-cutor failed to do so.
  Petitioner alleges Prosecutorial Misconduct,
and violation of his Confrontation Clause,

— 11 —

when the prosecutor failed to subpeona via duces tecum the presence of alleged victim of the count #7 and #8, also known as "Jane Doe", and Naylee G., counts #13, #14, and #15. The prosecutor used Nayelee G's testimony given at Preliminary Hearing, (RT p. 975, ln. 1-28, of the alleged 11-13-99-incident), but did not made a "good-faith-effort" to locate them. (Evidence Code section 240 (a) (4) (5)) The court's "process" to procure these alleged victims' presence was not utilized, in violation of petitioner's Confrontation Clause of the 6th Amendment to the United States Constitution. (Ohio V. Roberts, (1980), 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed. .2d 597.), and the use of a witness, Martin Gatica, for the 3-15-99-incident, (RT p. 801-16), was insufficient, in a clear violation of the 6th Amendment to the United States Constitution.

## III.

Petitioner alleges he was denied his Due Process of Law, guaranteed and secured under the 5th, 6th, and 14th Amendments

-18-

1  to the United States Constitution, in that
2  petitioner was in "Jail Garbs", and in
3  "restraints" on 7-6-00, and on 3-2-01.
4  CRT p. 2, ln. 1-25, RT p. 3-4.) (Rhoden v.
5  Rowland, (9th. Cir.1998), 154 F.3d 1034.)
6  (Parrish v. Small, 315 F.3d 1131, (9th Cir. 2003))

## IV.

9  Petitioner alleges he was denied his 5th,
10 6th, and 14th Amendments to the United
11 States Constitution, when the prosecu-
12 tion amended the information on April
13 25th, 2001, "after petitioner took the
14 Stand," and after the court had agreed
15 not to let certain alleged statements
16 into evidence. (People v. Chapman, 47
17 Cal. App. 3d 597, (1975).)

## V.

21 Petitioner alleges he was denied his 5th,
22 6th, and 14th Amendments to the
23 United States Constitution, when the
24 court erred in not granting defense
25 counsels "995-motion." (People v. Lujan,
26 87 Cal. Rptr. 2d 320, (1999).)
27 ////
28 ////.

-13-

## VI.

Petitioner alleges that his Due Process Clause under the 14th Amendment to the United States Constitution, was violated; in that the Abstract of Judgment indicates incorrectly that petitioner was sentenced to life "without the possibility of parole" (Clerk's Transcript, p. 686), and although this Court in its unpublished opinion ordered the Superior Court to correct its Abstract of Judgment to include that petitioner "is eligible for parole", it has not done so, and petitioner has been considered a lifer without the possibility of parole by the "CDC", California Department of Corrections. (See: Exhibit-B, attached to this petition.)

## CONCLUSION:

WHERETOFORE,
                Petitioner prays this Court to release petitioner from the unlawful custody to which he is under, in a clear violation of the United States, and California Constitutions.
Dated: 9-12-05.        /s/. Samuel Ortega

SAMUEL ORTEGA.

-14-

# EXHIBIT "A"

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SANTA CLARA

(ENDORSED)
F I L E D
SEP 0 2 2005

KIRI TORRE
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
C. Guerra
DEPUTY

In re                          )    No. BB152071
                               )
SAMUEL ORTEGA                  )    O R D E R
                               )
                               )
On Habeas Corpus               )
_____ )

SAMUEL ORTEGA ("Petitioner") petitions for a writ of habeas

corpus.  Petitioner contends his trial counsel was ineffective.

In order to demonstrate ineffective assistance of counsel, a

defendant must show (1) that his or her counsel's performance was

deficient because the lawyer's representation fell below an objective

standard of reasonableness under prevailing professional norms and

(2) counsel's deficient performance subjected the defendant to

prejudice, i.e., there is a reasonable probability that, but for

counsel's failings, the result would have been more favorable to the

defendant. (Strickland v. Washington (1984) 466 U.S. 668, 687-688,

cited in In Re Harris (1993) 5 Cal.4th at 832-833; In Re Alvernas

(1992) 2 Cal.4th 924, 936-937 and People v. Haskett (1990) 52 Cal.3d

210, 248.)

Our high court has stated "a defendant's self-serving statement

after [] conviction, and sentence [], is insufficient in and of itself

to sustain the defendant's burden of proof as to prejudice, and must

be corroborated independently by objective evidence.  A contrary

1

holding would lead to an unchecked flow of easily fabricated claims."

(In re Alvernaz (1992) 2 Cal.4th 924, 938.)

Petitioner herein has failed to show ineffective assistance and prejudice. Petitioner contends his attorney failed to present experts at trial. Petitioner however does not give any evidence as to what these alleged experts would have testified to.  Additionally, merely because his attorney did not pursue the defense strategy petitioner may have wanted does not constitute ineffective assistance of counsel. "A defendant does not have the right to present a defense of his own choosing, but merely the right to an adequate and competent defense. (See People v. Hamilton (1989) 48 Cal. 3d 1142, 1162.) ..."When a defendant chooses to be represented by professional counsel, that counsel is 'captain of the ship' and can make all but a few fundamental decisions for the defendant." (People v. Carpenter (1997) 15 Cal. 4th 312, 376.)" (People v. Welch (1999) 20 Cal. 4th 701, 728-729.)

Accordingly, the petition for a writ of habeas corpus is DENIED.

DATED: _____9/1_____, 2005

_____
PAUL BERNAL
JUDGE OF THE SUPERIOR COURT

cc:  Petitioner
     District Attorney
     Research
     CJIC

2

**IN THE SUPERIOR COURT OF ( FORNIA
IN AND FOR THE COUNTY OF S.  CLARA**

Plaintiff/Petitioner
Samuel Ortega

In re: People vs. Ortega

**PROOF OF SERVICE** OF: Order re:     as corpus

(ENDORSED)
**FILED**

SEP 0 2 2005

KIRI TORRE
Chief Executive Officer/Clerk
Superior Court of ... of Santa Clara
BY ___Guerra___ DEPUTY

Case Number:
**BB152071**

CLERK'S CERTIFICATE OF MAILIN ...   certify that I am not a party to this cause and that a
true copy of this document was mailed i.   lass postage fully prepaid in a sealed envelope
addressed as shown below and the docu    was mailed at SAN JOSE, CALIFORNIA on
09-02-05. I declare under penalty of per    hat the foregoing is true and correct.

DATED:   09-02-05

Kiri Torre, Chief Executive Officer

_C.Guerra_

BY:  Catherine Guerra, Deputy Clerk

| | |
|---|---|
| Samuel Ortega<br>Mule Creek State Prison<br>CDC #T24740<br>P.O. Box 409020<br>Ione, CA 95640 | Research Attorney Criminal Division<br>190 W. Hedding Street<br>San Jose, CA 95110<br>*Placed in Research Attorney pick up box at HOJ |
| | Office of the District Attorney<br>70 West Hedding Street<br>San Jose, CA 95110<br>*Placed in District Attorney pick up box at HOJ |
| | CJIC |
| | |

roof of service

Cla    Certificate of Service

# EXHIBIT "B"

**COPY**

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SAMUEL ORTEGA,<br><br>    Defendant and Appellant. | H023370<br>(Santa Clara County<br>Super. Ct. Nos. B9947307, BB152071)<br><br>**FILED**<br><br>NOV 2 2 2002<br>Court of Appeal - Sixth App. Dist.<br>By _____<br>DEPUTY |

A jury convicted defendant Samuel Ortega of multiple sexual offenses, assault with a deadly weapon, attempted kidnapping for rape, and possession of a controlled substance. The convictions involved 20 counts relating to nine different female victims. The trial court sentenced defendant to two consecutive life terms, consecutive to a term of 25 years to life, consecutive to a determinate term of 55 years in state prison. Defendant appeals, contending, among other things, that there was insufficient evidence to support the special circumstance of kidnapping that resulted in the term of 25 years to life imposed pursuant to Penal Code section 667.61.[1]

### A.    INTRODUCTION

The residents and shoppers in and around Latham Street in Mountain View had been terrorized by a series of nighttime assaults on women. Victim 1 was raped in 1997. Eight other women were attacked in 1999. Defendant was arrested on December 23,

---

[1] Hereafter, all undesignated statutory references are to the Penal Code.

1 ran home and told her family what had happened. She was crying and shaking. A police officer responded and Victim 1 was taken to the hospital for an examination. The examination was consistent with forcible rape. DNA samples were taken and preserved. These samples were later determined to have come from the defendant. Victim 1 testified that although at the time of the rape defendant had been wearing a dark sweatshirt with the hood tied tight around his face, she recognized his eyes and his voice and positively identified defendant as the man who had attacked her.

Over two years later, at 5:40 on the morning of December 23, 1999, Victim 8 was walking to work when she was hit on the lower leg by a bicycle. Two workmen were sitting in their trucks in the vicinity of Latham Street at the time. One of the men saw a man on a bicycle hitting a woman who was on foot. The victim screamed and got away when two men ran up. The assailant rode off on his bicycle. One of the workmen later positively identified defendant as the person he saw riding a bicycle in the same area that morning.

Less than an hour later, around 6:20 a.m., Victim 9 left her house to get in her car to go to work. When she opened her car door a man stood up from behind the next car in the parking lot. The man was wearing a jacket with a hood, but when the hood came down Victim 9 recognized defendant—the "Salvadorian" who lived four trailers down from her own. Defendant slashed at her and cut her cheek and throat. The wounds required 50 to 60 stitches to close and Victim 9 continues to have trouble eating and drinking. Later, an investigating officer went to defendant's trailer where he seized defendant's jacket and a bicycle that was parked nearby. Blood on the jacket was determined to have come from Victim 9.

### 2. The Defense Case

Defendant testified that he did not remember attacking or raping Victim 1 in 1997. He admitted that he knew who Victim 1 was, but he just did not remember whether he ever had sex with her. He said that he had had relations with a lot of women, but not by

3

not identify him. Defendant later described this incident to the police. He said the victim was the sister of a person who beat him up. He admitted hiding in the bushes, grabbing her as she passed, and holding her down with a knife. Defendant also admitted having told her to take her clothes off. This third victim was never identified.

Victim 4 was out of the country at the time of trial. Her sister-in-law testified as to the incidents pertaining to the attack on her. She said that on April 6, 1999 Victim 4 came to her house, hysterical and out of breath. Victim 4 said that a man wearing a black ski mask came from the bushes on Latham Street carrying a knife, and that he attacked her and threw her to the ground. Victim 4 gave the same story to the police officers that came to investigate. She told them she had defended herself with her shopping bags. There were tears in the shopping bags and in Victim 4's shirt that were consistent with her story. The attack on Victim 4 occurred in the same location as the attack on Victim 2 the month before. In his statement to the police in December, defendant said Victim 4 was someone who had told him "bad things" in the past. He said that he hid in the bushes with a knife and that she fought him off with her shopping bags.

Victim 5 testified that she was visiting this country from Korea. On May 8, 1999 at around 8:35 p.m. she walked down Latham Street and saw a man standing behind a tree. His face was covered with a ski mask and he carried a knife, which Victim 5 described as eight to nine inches long. Victim 5 fled down the street. She screamed and threw the shopping bags she had been carrying over her shoulders as she ran. She felt a knife plunge into her right hip. The attacker ran away. The officer investigating the incident found a little "cropped out" area behind the bushes where the attack occurred. The location where Victim 5 was attacked was the same place Victim 3 had been attacked in April. In his statement to the police in December, defendant described the incident as the one with "the Chinese woman." He said that he hid in the bushes until she walked by, then he jumped, yelled, and swung a knife at her legs. Defendant claimed the

5

Victim 7. He said he had threatened Victim 7 with a knife and he admitted telling her to take her clothes off.

### C.    THE OPERATIVE PLEADING AND THE VERDICT

The prosecutor amended the information to conform to proof. The Fourth Amended Consolidated Information included 22 counts:

Victim 1 (3/24/97):

Count 1-Penetration with a foreign object (§ 289, subd. (a)) with special circumstances pursuant to section 667.61, subdivisions (a) and (e), personal use of a dangerous and deadly weapon (§ 12022.3, subd. (a)) and kidnapping (§ 207));

Count 2-Forcible rape (§ 261, subd. (a)(2)) with special circumstances as alleged in Count 1;

Count 3-Forcible sodomy (§ 286, subd. (c)(2)) with special circumstances as alleged in Count 1;

Count 4-Forcible rape (§ 261, subd. (a)(2)) with special circumstances as alleged in Count 1.

Victim 2 (3/15/99):

Count 5-Attempted forcible rape (§§ 664, 261, subd. (a)(2)) with an enhancement for use of a dangerous and deadly weapon (§ 12022.3, subd. (a));

Count 6-Assault with a deadly weapon (§ 245, subd. (a)(1)).

Victim 3 (3/15/99):

Count 7-Attempted forcible rape (§§ 664, 261, subd. (a)(2)) with an enhancement for use of a dangerous and deadly weapon (§ 12022.3, subd. (a));

Count 8-Assault with a deadly weapon (§ 245, subd. (a)(1)).

Victim 4 (4/6/99):

Count 9-Attempted forcible rape (§§ 664, 261, subd. (a)(2)) with an enhancement for use of a dangerous and deadly weapon (§ 12022.3, subd. (a));

Count 10-Assault with a deadly weapon (§ 245, subd. (a)(1)).

not guilty of the attempted murder of Victims 5 and 9 but did find him guilty of the lesser included offense of assault with a deadly weapon (Counts 12 and 20). The jury found defendant not guilty of attempted forcible rape of Victim 8 (Count 19) and could not reach a verdict on the attempted forcible rape of Victim 9 (Count 21). A mistrial was declared as to the latter and the prosecution dismissed that count.

The trial court sentenced defendant on Counts 1 through 4 pursuant to section 667.6, subdivision (c) and sentenced him on all other counts pursuant to section 1170.1. Defendant received consecutive life terms on Counts 13 and 16 (kidnapping for rape) and a consecutive term of 25 years to life for Count 1 (penetration with a foreign object). Defendant also received an aggregate, consecutive term of 55 years on the remaining counts and enhancements.

### D.    ISSUES

Defendant raises the following issues on appeal:

1.    Did the trial court abuse its discretion under Evidence Code section 352 in admitting evidence of the attacks on Victim 2, Victim 4 and Victim 5?

2.    Was the evidence sufficient to support a finding that defendant had the specific intent to rape Victim 2, Victim 4, and Victim 5?

3.    Where there is insufficient evidence under the applicable standard to support the jury's finding that defendant committed the simple kidnapping of Victim 1 (§ 207), may we instead consider the finding a de facto determination that defendant had committed kidnapping for rape? (§ 209, subd. (b).)

4.    Defendant points out that abstract of judgment incorrectly indicates that he was sentenced to three terms of life without the possibility of parole rather than two indeterminate life terms for Counts 13 and 16, and one indeterminate term of 25 years to life on Count 1, all with the possibility of parole. In addition, the abstract of judgment

According to defendant, at the point at which he completed his testimony on direct examination his identity as the assailant of Victim 1 and Victim 9 had been established. DNA evidence identified him as the perpetrator of the rape of Victim 1. Victim 9 positively identified him because she knew him. Defendant argues that since his identity had been established, the only issue for which any of the uncharged conduct was relevant was the issue of whether he had the intent to rape either of these victims. In our view, the acceptable scope of impeaching evidence was not so circumscribed.

In order to constitute impeachment, the evidence does not necessarily have to controvert defendant's testimony on any one discreet issue. The jury is permitted to consider "any matter that has any tendency in reason to prove or disprove the truthfulness of [the witness's] testimony at the hearing." (Evid. Code, § 780.) That is, the prosecutor was entitled to put on evidence from which a jury might conclude that defendant was not to be believed. Therefore, so long as defendant's testimony raised a factual dispute over any of the elements of the charged offenses, his credibility was subject to attack.

Defendant did dispute the crimes that were charged. He admitted on direct examination that he might have had sex with Victim 1 but that he did not have sex by force. Therefore, he implied that if intercourse occurred, Victim 1 had consented to it. He flatly denied doing harm to Victim 9. He also testified that he was very "messed up" on alcohol and cocaine at the time of that attack, suggesting that he was incapable of forming the specific intent necessary to the attempted rape and murder charges. Therefore, even if we presume that the prosecution had conclusively established that defendant was the person who had intercourse with Victim 1, and that he was the person who cut Victim 9, defendant's credibility was nevertheless a fact in issue.

The attacks on Victims 2, 4, and 5 demonstrated immoral conduct. Evidence of such conduct is relevant to the issue of credibility and admissible, subject only to the court's discretion under Evidence Code section 352. (*Wheeler, supra,* 4 Cal.4th 284; and see Cal. Const., art. I, § 28, subd. (d).) *Wheeler* counsels that the offer of evidence of

11

Defendant's having jumped out of the bushes and attacked these women with a knife plainly demonstrates moral laxity. Proof of the acts was made by defendant's own confession, not solely on the allegations of the third parties. And there was no possibility of surprise because defendant was warned before trial began and before he actually took the stand that the prosecutor intended to use this evidence to prove that he was not telling the truth.

In addition to its relevance as impeachment, generally, the evidence directly contradicted defendant's testimony. The evidence tended to show defendant's planning and preparation as to both the sexual offenses and to the charge of attempted premeditated murder. As to the evidence of the attack on Victim 2, defendant told the police officers that he had seen her coming down the street so he hid and then he hit her. Defendant admitted that he hid in the bushes waiting for Victim 4, and that he threw her to the ground and tried to stab her with a kitchen knife. Defendant also admitted lying in wait for Victim 5 and when she walked by he jumped out in front of her and yelled and swung a knife at her. In short, the evidence was that on these three occasions defendant hid himself to surprise his victims and threatened them all with a knife. From that evidence a jury could reasonably conclude that he did the same thing in connection with his encounter with Victim 1 and that as to her, the encounter was not consensual as defendant suggested it must have been. A jury could also reasonably infer from evidence of these three attacks that defendant was also lying in wait for Victim 9, planning the attack rather than to believe, as defendant implied, that if he did cut her it was the result of his inebriated condition.

In sum, we cannot say that the trial court's decision to admit this evidence was arbitrary, capricious, or patently absurd. There was no abuse of discretion.

2.    *Sufficiency of the Evidence - Intent to Rape Victims 2, 4, and 5.*

Defendant argues that the convictions of attempted rape as to Victims 2, 4, and 5 must be reversed because, although there is substantial evidence that these women were

13

something happened for a particular reason on one or more separate occasions, it is likely that it happened for the same reason on the occasion being analyzed. (See *People v. Robbins* (1988) 45 Cal.3d 867, 879-880, citing 2 Wigmore, Evidence (Chadbourn rev. 1979) § 302, at p. 241; see also *People v. Carpenter* (1997) 15 Cal.4th 312, 379.) The rationale for admitting prior acts to show intent applies equally to acts occurring before or after or around the same time as the occasion in issue.

Here we have not just one or two similar acts from which to infer defendant's intent on the three occasions he challenges. We have one rape (Victim 1) and three attempted rapes (Victims 3, 6, and 7) that were carried out in a fashion that was nearly identical to the manner in which defendant commenced the attacks on Victims 2, 4, and 5. Defendant raped Victim 1 in 1997 by jumping out at her from behind the bushes. He threatened her with a knife, pulled her to a secluded area, forced her to her hands and knees, and raped her from behind. Every other attack began in almost exactly the same way. Defendant leapt from the bushes surprising his victim; he hid his face, and he threatened her with a knife. He never robbed the victim or snatched purses or parcels. In four of the seven convictions for rape or attempted rape, after defendant had overpowered his victim, he told her to take her clothes off, grabbed her, or on the one occasion he actually accomplished the rape. In each of the three cases defendant challenges the assault was fortuitously aborted by a passerby or by the victim's vigorous resistance. Victim 2 said that a man came by within about 30 seconds of the attack. Victim 4 screamed and defended herself with her shopping bags. Victim 5 screamed and ran away, throwing everything she was carrying over her shoulders at her assailant. Thus, in none of these three cases did defendant ever overpower the victim and so did not have the opportunity, as he did in the other four cases, to proceed with his intended course of action.

*Walters v. Maass* (9th Cir. 1995) 45 F.3d 1355 (*Maass*), upon which defendant relies, is not applicable here. In *Maass*, the defendant was convicted of attempted rape

15

think I wanted to rape her, that's what they say. But, no, why would I. I have a lot of girlfriends, too, I have a lot of girlfriends, so I have no need to be doing that." In reference to the attack on Victim 8, defendant said: "Yes. No, well, I . . . like I tell you, I did. . . . I mean, I do accept, but what I don't like is that, I mean, that they're going to say that [it was] for the purpose of raping them." Officer Vieyra said: "No?" To which defendant responded, "Me, for the purpose of raping a woman, not me. That's why I have a big mouth, to speak up." Defendant's unprompted references to rape could reasonably be construed as demonstrating a general consciousness of guilt in that regard.

The foregoing is sufficient evidence from which a jury could reasonably have drawn the inference that defendant intended to rape Victim 2, Victim 4, and Victim 5.

      3.     *The Kidnapping Special Circumstance (Counts 1-4).*

Section 667.61 sets forth a harsher sentencing scheme for certain sex crimes perpetrated by force, including each of the offenses alleged in Counts 1 through 4. Subdivision (a) of section 667.61 provides: "A person who is convicted of [a specified offense] under one or more of the circumstances specified in subdivision (d) or under two or more of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for 25 years except as provided in subdivision (j)." Subdivision (b) reduces the sentence to 15 years to life if only one of the circumstances specified in subdivision (e) is found true. Among the circumstances specified in subdivision (e) are kidnapping in violation of section 207, 209, or 209.5, and use of a dangerous or deadly weapon or firearm in violation of section 12022, 12022.3, 12022.5, or 12022.53.

Counts 1 through 4 concerned the 1997 attack on Victim 1. As to each of these counts the prosecution alleged two special circumstances: use of a dangerous or deadly weapon (§ 12022.3, subd. (a)) and simple kidnapping (§ 207). The trial court imposed the indeterminate term of 25 years to life for Count 1 based upon the jury's having found both these circumstances to be true. Defendant argues that there is insufficient evidence

17

defendant guilty of violating section 209, his sentence of 25 years to life may stand. We are not persuaded.

People v. Jones (1999) 75 Cal.App.4th 616 (Jones), upon which the Attorney General relies, is distinguishable. In Jones, the jury found the defendant guilty of kidnapping during commission of a carjacking. (§ 209.5.) On appeal, the parties agreed that there is insufficient evidence to support the conviction because the offense of kidnapping during the commission of a carjacking requires a completed carjacking and no completed carjacking had taken place. (Jones, supra, 75 Cal.App.4th at p. 624.) The appellate court determined, however, that the jury's findings supported the lesser-included offense of attempted carjacking. (Id. at pp. 627-628.) The trial court had instructed the jury, in connection with the original charge, that the " 'specific intent to facilitate the commission of carjacking must be present when the kidnapping commences.' " (Id. at p. 627.) The court had also instructed the jury " 'it is not necessary to establish that this purpose was accomplished. The crime is complete if the kidnapping is done for that purpose.' " (Id. at p. 628.) Although the appellate court presumed this latter instruction was incorrect insofar as it applied to the kidnapping for carjacking offense, since the jury was so instructed and returned a guilty verdict, the jury effectively found a direct but ineffectual act done towards the commission of the carjacking, i.e., the forcible moving of the victim with the intent to carjack. (Ibid.)

---

entirely on point. In Mancebo, the jury had convicted the defendant of sex offenses against two victims and found true two special circumstances as to each victim. After conviction, the trial court substituted a multiple victim special circumstance (§ 667.61, subd. (e)(5)), which had not been pleaded, for the gun-use circumstance that had appeared in the pleading. The court then used the gun-use finding to further enhance the sentence under another code section. (Mancebo, supra, 27 Cal.4th at p. 740.) The primary basis for reversal was that the defendant had no notice that the facts alleged in the information would be used to provide an even harsher sentence than that which appeared from the pleading. (Id. at p. 753.) Notice is not an issue that is before us in this case.

19

specified sexual offense because, unlike the jury in *Jones*, the jury was never asked to decide that fact.

There is insufficient evidence to support the finding of kidnapping in connection with Counts 1 through 4. Defendant does not challenge the true finding relating to his use of a knife. Therefore, since there is sufficient evidence to support only one special circumstance, the applicable sentencing provision requires that defendant's sentence on Count 1 be reduced to 15 years to life. (§ 667.61, subd. (b).) [4] Our decision does not affect the sentences imposed on Counts 2 through 4. (§ 667.61, subd. (g).)

### F.    DISPOSITION

We hereby strike the Penal Code section 667.61, subdivision (a) enhancement imposed in connection with Count 1 and impose in its place an enhancement pursuant to Penal Code section 667.61, subdivision (b), thereby reducing defendant's sentence on Count 1 to 15 years to life. The superior court is ordered to prepare an amended abstract of judgment incorporating the above changes. As so modified, the judgment is affirmed. We remind the court to insure that the amended abstract correctly reflects that all three life sentences imposed in this case include the possibility of parole and that the Count 13 offense took place in 1999. The superior court shall forward a copy of the amended abstract to the Department of Corrections.

---

[4] Because we have determined that there is insufficient evidence to support the finding of kidnapping as to Counts 1 through 4, we do not reach defendant's alternative argument relating to instructional error.

21

# DECLARATION OF SERVICE BY MAIL

CASE NAME: In Re: ORTEGA,     CASE NO: # B99473O7/BB152O71.

I, Samuel Ortega                  , am a resident of the state of California Mule
Creek State Prison ( M. C. S. P) at Ione, County of Amador, California, and am at least 18 years
of age, and am party to the within action. My mailing address is P.O. Box 409000, Ione, California
95640-9000.

On  9/12/05          , I served a true and correct copy of the following document(s);

Petition for Writ of Habeas Corpus and
Exhibits therein in the support thereof.

On each party listed below by placing it in a sealed envelope, with adequate postage or provided,
and depositing said envelope in the institutional mail box or turned said envelope to custodial
personnel for the United States Mail at Mule Creek State Prison, P.O. Box 409000, Ione,
California 956490900. Each party to the action has been duly served.

This ORIGINAL
     copy is being mailed to:
     Sixth District Court of Appeal
     #333 West Santa Clara Street, # 1060.
     San Jose, CA. 95113-1717.

I have mailed additional copies to:

There is regular service by the United States Mail between the above place of mailing and the
parties listed.

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed this date: 9/12/    , 2005, at Ione, California.

Signed: Samuel Ortega          , CDC No: T-24740.


## M. C. S. P MAILROOM ACKNOWLEDGEMENT OF MAILING

DATE:                    SIGNED: